DeGorter v. Capitol Bancorp Ltd., 2011 NCBC 28.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF MECKLENBURG | SUPERIOR COURT DIVISION 11 CVS 20825 |

DAVID J. DeGORTER,

          Plaintiff,

v.

CAPITOL BANCORP LTD,
CAPITOL
WEALTH, INC. d/b/a CAPITOL
WEALTH ADVISORS, and CAPITOL
NATIONAL BANK, N.A.,

          Defendants.

**ORDER & OPINION**

    *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. by Jeffery E. Oleynik, Jennifer K. Van Zant and Kathleen A. Gleason for Plaintiff.*

    *Smith Moore Leatherwood LLP by Jonathan P. Heyl, Heather C. White and William R. Forstner for Defendants.*

Murphy, Judge.

    {1}    This matter comes before the Court upon Defendants' Motion to Dismiss Plaintiff's claim under the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), section 75-1.1 of the North Carolina General Statues.

    {2}    After considering the Court file, Defendant's Motion and supporting memoranda, Plaintiff's Response to the Motion, and the arguments and contentions of counsel at the March 30, 2011 telephone hearing, the Court hereby **GRANTS** Defendants' Motion to Dismiss.

## I.

## PROCEDURAL BACKGROUND

{3} Plaintiff David J. DeGorter filed his complaint on October 28, 2010.

{4} The matter was designated to the North Carolina Business Court as a mandatory complex business case on December 8, 2010 and assigned to me.

{5} Defendants filed their Motion to Dismiss Plaintiff's claim under the UDTPA and supporting memorandum on January 10, 2011.

{6} On February 11, 2011, Plaintiff filed his responsive brief in opposition to Defendants' Motion to Dismiss. Defendants filed their reply brief on February 24, 2011.

{7} The Court conducted a telephone hearing on Defendants' Motion to Dismiss on March 30, 2011.

## II.

## FACTUAL BACKGROUND

{8} At all times relevant to this case, Defendant Capitol Bancorp Ltd. ("Capitol Bancorp") was a holding company in the business of community bank development nationwide; Defendant Capitol Wealth, Inc. ("Capitol Wealth") was a wholly-owned subsidiary of Capitol Bancorp in the business of wealth management and selling wealth management services; and Defendant Capital National Bank, N.A. was a wholly-owned subsidiary of Capitol Bancorp in the business of providing banking services. Compl. ¶¶ 3-5.

{9}     At all times relevant to this case, Plaintiff was the sole managing member of DeGorter Capital Partners, LLC in the business of, among other things, providing and/or securing funding for start-up or purchased businesses.  Compl. ¶ 8.

{10}     Plaintiff was contacted by representatives of Forethought Financial Group, Inc. ("FFGI") in or about August 2007 about the possible sale of Forethought Federal Savings Bank ("FFSB"), a trust savings bank owned by FFGI.  Compl. ¶ 7.

{11}     In the fall and winter of 2007, Plaintiff contacted various entities, including Defendant Capitol Wealth, about the sale of FFSB.  Compl. ¶ 10.

{12}     Initially, Plaintiff was only going to be the broker for the FFSB transaction, but at some time between November 19, 2007 and December 18, 2007, the parties agreed that Plaintiff would also be an investor in the transaction. Compl. ¶ 16.

{13}     On or about December 18, 2007, Plaintiff entered into a letter of intent with Capitol Bancorp, FFGI and FFSB to form a new entity through which they would acquire ownership of, and serve as the holding company for, FFSB.  Compl. ¶ 17.

{14}     The transaction to acquire ownership of FFSB required the approval of the Federal Reserve Board.  Compl. ¶ 21.

{15}     In or about May 2008, Capital Bancorp notified the Federal Reserve Board of its intent to purchase 51% of the voting shares of FFSB; Plaintiff and FFGI would own the remaining 24.6% and 24.4% of the voting shares, respectively. Compl. ¶ 23.

{16}    When assessing a proposed transaction, the Federal Reserve Board considers, among other things, the financial condition and projected capital positions of the acquiring bank.  Compl. ¶ 21.

{17}    Capitol Bancorp issued a $33.5 million 10.5% offering of trust preferred securities priced at $10 per share in or about June 2008.  Compl. ¶ 26. Plaintiff alleges that an agent of Capitol Wealth informed Plaintiff that the Federal Reserve Board would approve the FFSB transaction upon full subscription of Capitol Bancorp's trust preferred securities offering.  Compl. ¶¶ 24, 27.

{18}    In or about June 2008, Capitol Bancorp's trust preferred securities offering was undersubscribed.  Compl. ¶ 28.  A representative of Capitol Wealth approached Plaintiff about purchasing the remaining shares needed to fulfill the trust preferred securities subscription, but Plaintiff informed the representative that he was unable to do so because his capital was committed to the FFSB transaction.  Compl. ¶¶ 29, 30.

{19}    Plaintiff alleges the representative induced him to make the purchase by assuring Plaintiff that Capitol Bancorp, through its subsidiary Capital National Bank, N.A., would finance 100% of Plaintiff's purchase and Capitol Bancorp would buy back the shares after the FSSB transaction was completed.  Compl. ¶¶ 31-33.

{20}    Plaintiff alleges he only agreed to purchase the trust preferred securities so that the FFSB transaction would be approved, and on the condition that Capitol Bancorp would repurchase the shares after the FFSB transaction was approved by the Federal Reserve.  Compl. ¶ 35.

{21}    On or about June 3, 2008, Plaintiff took out a $1.5 million loan with Capitol National Bank, N.A. to purchase 150,000 shares of the trust preferred securities offering and executed two credit agreements: one for a secured loan of $1,050,000 and another for an unsecured loan of $450,000.  Compl. ¶¶ 33, 39.

{22}    Plaintiff alleges that Capitol Bancorp violated several banking laws in connection with the loans to Plaintiff: (1) that banks are prohibited from loaning money secured by a stock that has a value of less than twice the amount of the loan; and (2) that loaning a customer money that was transferred to an affiliate constitutes a transaction with an affiliate.  Compl. ¶¶ 41-43.  Plaintiff further alleges that at the time of the loan, he was unaware that the transaction violated banking laws.  Compl. ¶ 44.

{23}    On or about August 13, 2008, Defendants informed Plaintiff that the Federal Reserve was most likely not going to approve the FFSB transaction based only upon the trust preferred securities offering.  Due to Capitol Bancorp's financial condition and capital position, the Federal Reserve Board would not likely approve any involvement on Capitol Bancorp's part in the transaction to acquire FFSB. Compl. ¶¶ 52-54.

{24}    From September 2008 through January 2009, Capitol Bancorp attempted to restructure the FFSB transaction and save the deal but was unsuccessful because the Federal Reserve Board continued to be concerned about Capitol Bancorp's level of involvement in the FFSB transaction.  Compl. ¶ 54.

{25} Plaintiff alleges in his complaint that the Federal Reserve Board never told Capitol Bancorp or its affiliates that it would approve the FFSB transaction if Capitol Bancorp raised $30 million through the sale of trust preferred securities. Compl. ¶ 45-46. Plaintiff further alleges that he was unaware of Capitol Bancorp's financial troubles because they were not public at the time Plaintiff executed the loans from Capitol National Bank, N.A. and neither Capitol Bancorp nor any of its affiliates made Plaintiff aware of the troubles. Compl. ¶¶ 47-48, 50.

{26} On or about January 9, 2009, the FFSB transaction fell apart and FFGI terminated the letter of intent to which Plaintiff was a signatory. Compl. ¶¶ 54-56. Shortly thereafter, on September 21, 2009, the Federal Reserve Board prohibited Capitol Bancorp from paying any dividends on the trust preferred securities. Compl. ¶ 61.

{27} On or about October 28, 2010 when Plaintiff filed his complaint, the market value of the trust preferred securities was $1.85 per share. Compl. ¶ 63. Plaintiff's purchase price had been $10 per share. Compl. ¶ 26.

{28} Plaintiff alleges Defendants' conduct regarding the role of the trust preferred securities offering in the FFSB transaction constituted unfair or deceptive trade practices under the UDTPA, section 75-1.1 of the North Carolina General Statutes. Compl. ¶ 93. Plaintiff claims, among other things, that Defendants deceived him into purchasing the trust preferred securities by misrepresenting or failing to timely disclose pertinent information about the financial position of

Capitol Bancorp. Compl. ¶¶ 29, 35, 45-48. Plaintiff further alleges that

Defendants' conduct was "in or affecting commerce." Compl. ¶ 94.

## III.

## ANALYSIS

## A.

## Standard of Review

{29} The question for the Court on a motion to dismiss is "whether, as a

matter of law, the allegations of the complaint, treated as true, are sufficient to

state a claim upon which relief may be granted under some legal theory, whether

properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355

S.E.2d 838, 840 (1987) (citing *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611

(1979)). "The pleadings, when taken as true, [must be] legally sufficient to satisfy

the elements of at least some legally recognized claim." *Arroyo v. Scottie's Prof'l

Window Cleaning, Inc.*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995) (citing

*Harris v. NCBC Nat'l Bank*, 85 N.C. App. 669, 355 S.E.2d 838 (1987)).

{30} In analyzing the sufficiency of the complaint under Rule 12(b)(6) of the

North Carolina Rules of Civil Procedure, "the complaint must be liberally

construed." *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987)

(citing *Jones v. City of Greensboro*, 51 N.C. App. 571, 277 S.E.2d 562 (1981)).

{31} When considering a motion to dismiss for failure to state a claim upon

which relief can be granted, "the well-pleaded material allegations of the complaint

are taken as admitted; but conclusions of law or unwarranted deductions of fact are

not admitted." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 613, 646 S.E.2d 826, 837 (2007) (quoting *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).

## B.

## Unfair and Deceptive Trade Practices Claim

{32} In order to properly assert a claim for unfair and deceptive trade practices under section 75-1.1 of the North Carolina General Statutes a plaintiff must allege that the defendant committed an unfair or deceptive act or practice that was "in or affecting commerce" and that the plaintiff was injured as a proximate result of the alleged act. *Latigo Invs. II, v. Waddell & Reed Fin., Inc.* 2007 NCBC 17, ¶ 35 (N.C. Super. Ct. June 11, 2007) http://www.ncbusinesscourt.net/ opinions/2007%20N CBC%2017.pdf.

{33} While the commerce element of the UDTPA is broad, it does not encompass "all wrongs" that occur in a business setting. *Sterner v. Penn*, 159 N.C. App. 626, 632–33, 583 S.E.2d 670, 675 (2003). The purpose of the UDTPA is to govern the interactions between market participants, including those between businesses and those between a consumer and a business. *White v. Thompson*, 364 N.C. 47, 52, 691 S.E.2d 676, 679 (2010) (citing *Bhatti v. Buckland*, 328 N.C. 240, 245-46, 400 S.E.2d 440, 443-44 (1991)).

{34} Thus, an unfair or deceptive act or practice which is not between market participants, or that is not "in or affecting commerce" is outside the scope of the UDTPA. *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592-93,

403 S.E.2d 483, 492 (1991); *see also Wilkie v. Stanley*, 2011 NCBC 11, ¶ 10 (N.C. Super. Ct. April 20, 2011) http://www.ncbusinesscourt.net/opinions/ 2011_NCBC_11.pdf.

{35}    The UDTPA defines "commerce" as "business activities." N.C. Gen. Stat. § 75-1.1(b). It is well established that under the UDTPA, "business activities" indicates "the manner in which businesses conduct their regular, day-to-day activities, or affairs, . . . or whatever other activities the business regularly engages in and for which it is organized." *HAJMM,* at 594, 403 S.E.2d at 494.

{36}    Certain events, however, are deemed to be extraordinary events outside of the regular, day-to-day activities or affairs of a business. Such extraordinary events are, therefore, not deemed "business activities" and are not "in or affecting commerce." *Id.* at 594, 403 S.E.2d at 493.

{37}    Courts have consistently and explicitly held that securities transactions are extraordinary events that remain outside the purview of "business activities" and are thus, beyond the scope of the UDTPA. *Id.; see also Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 274-75, 333 S.E.2d 236, 241 (1985) (pronouncing that securities transactions were beyond the scope of the UDTPA); *Latigo*, 2007 NCBC 17 ¶ 37; *Garlock v. Hilliard*, 2000 NCBC 11, ¶ 24 (N.C. Super. Ct., Aug. 22, 2000) http://www.ncbusinesscourt.net/opinions/2000%2 0NCBC%2011.htm (holding that there was "no purchase and sale transaction to which Chapter 75 would apply" because the decision by the parties "constituted a securities transaction and an activity to raise capital" that was not part of their daily business activities).

{38} The issuance, transfer or redemption of securities is "an extraordinary event done for the purpose of raising capital in order for [an] enterprise to conduct its business activities." *HAJMM*, at 594, 403 S.E.2d at 493. Even considering a "reasonably broad interpretation of the legislative intent underlying [the terms of the UDTPA]," the extraordinary nature of securities transactions in relation to an enterprise's business activities is deemed to be outside the stream of commerce. *Id.*

{39} Furthermore, no state or federal court has subjected securities transactions to its unfair and deceptive trade practices act. *Skinner* at 274-75, 333 S.E.2d 236, 241 (1985). Courts have found that securities are already pervasively and intricately regulated by state and federal agencies. *Id.* Creating liability for securities transactions under the UDTPA would, therefore, subject parties to overlapping regulation and enforcement. *Id.*

{40} This case involves a securities transaction – the purchase and issuance of trust preferred securities from Capitol Bancorp.

{41} Securities transactions in North Carolina are pervasively and intricately regulated by both state and federal law. *Id.* at 275, 333 S.E.2d at 241.

{42} Whether or not the securities were offered in hopes of prompting the Federal Reserve Board's approval of the FFSB transaction, Capitol Bancorp's issuance of the trust preferred securities was a plain attempt to improve the capital position of the company.

{43} Plaintiff purchased shares of these trust preferred securities through a loan from Capitol National Bank, N.A. and now seeks to have these transactions

rescinded because the FFSB transaction was not approved and the trust preferred securities are now virtually worthless.

{44} Because Plaintiff alleges injury stemming from a securities transaction, the Court concludes Defendants' conduct was not "in or affecting commerce" for purposes of the UDTPA.

{45} Plaintiff, however, attempts to distinguish this matter from the long line of precedent exempting securities from the UDTPA by contending that the securities exemption should not apply because the trust preferred securities were issued in the context of a larger misrepresentation involving the purchase of a bank.

{46} This is similar to an argument made by the plaintiffs in a recent North Carolina Business Court case in an attempt to persuade the Court that the facts of their case did not bar a claim under the UDTPA. *See Latigo*, 2007 NCBC 17 ¶ 45. The plaintiffs in *Latigo* argued that "the transaction at issue . . . is not a capital raising device,[1] but rather involves the sale of certain ownership interests in a company" and "[that a claim under the UDTPA] in this case does not directly concern the terms of a capital raising device, but rather [the defendant's] representations made in connection with their normal business activity." *Id.*

{47} The *Latigo* Court was not persuaded by the plaintiffs' argument in that case and held that even representations made in the context of a larger scheme are excluded from liability under the UDTPA if they involved a securities transaction or

---

[1] In addition to conventional securities transactions, the securities exemption under the UDTPA has been expanded several times to also include capital raising devices and transactions entered into for the purpose of raising capital. *Oberlin Capital, LP v. Slavin*, 147 N.C. App. 52, 62, 554 S.E.2d 840, 848 (2001) (affirming the dismissal of a claim under the UDTPA when the transaction at issue involved a loan agreement to provide working capital).

a capital raising device. *Id.* at ¶¶ 45-49. The Court explained that "if [it] were writing on a clean slate," given the importance of capital raising devices in today's business world, it "would not exclude misrepresentations made in the context of capital raising transactions from the reach of what is intended to be a broad remedial statute." *Id.* at ¶ 47. The Court acknowledged, however, that under existing precedent "the only relevant question is *whether the transactions at issue involved securities* or other financial instruments involved in raising capital." *Id.* at ¶ 48 (quoting *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 304, 603 S.E.2d 147, 161 (2004)) (emphasis added); *see also Harrah v. J.C. Bradford & Co.*, No. 93-2458, 1994 U.S. App. LEXIS 27827, at *13 (4th Cir., Oct. 6, 1994) (applying N.C. law) (finding the plaintiff's contention that securities were a mere backdrop to the defendant's larger scheme involving much more than securities fraud unpersuasive because the "mere backdrop" did not change that plaintiff's allegations were premised on securities-based wrongdoings).

{48} Similar to the *Latigo* plaintiffs, Plaintiff contends that the FFSB transaction was normal business activity because "the business of the parties was to buy, develop, and market banks and bank services" and "the purpose of the [FFSB] transaction was to buy a bank." Pl.'s Resp. Br. in Opp'n to Defs.' Partial Mot. to Dismiss, at 7-8.

{49} However, just as in *Latigo*, Plaintiff's attempt to distinguish this matter and bypass the securities exemption is unavailing. *See Latigo* at ¶ 45; *see also Sterner* at 634-35, 583 S.E.2d at 676 (dismissing the plaintiff's claim under the

UDTPA even though the defendant's business regularly engaged in, and was organized for the purpose of, conducting securities transactions). Under current precedent, whether Plaintiff was unfairly induced to purchase the trust preferred securities as part of a larger misrepresentation to gain the Federal Reserve Board's approval of the FFSB transaction is irrelevant. The only relevant question is whether securities were involved in the transaction.

{50} The issue at hand is plainly securities-related. Plaintiff's entire claim rests upon the fact that Defendants unfairly induced him to execute a $1.5 million loan to purchase 150,000 shares of the trust preferred securities. Plaintiff alleges that Defendants deceived him into purchasing the trust preferred securities by misrepresenting or failing to disclose information. Plaintiff's alleged injuries stem from use of the loan proceeds to the purchase of the now worthless trust preferred securities. The principal relief Plaintiff seeks is rescission of the loan agreements. The trust preferred securities transaction, therefore, lies at the heart of Plaintiff's complaint. It cannot be said to be merely ancillary or tangential to another transaction. *See e.g. Hand v. ACE Hardware*, No. 4:92CV00454, 1995 U.S. Dist. LEXIS 10818, at *19-20 (M.D.N.C. July 7, 1995) (applying N.C. law) (holding that the UDTPA applied because the securities sale was ancillary to the main purpose of the transaction as evidenced by the fact that none of plaintiffs' claims, allegations of injury or remedies concerned the stocks).

{51} Because Plaintiff's claim involves a securities transaction, Defendants' actions are not "in or affecting commerce" as defined by case law, and are, therefore,

exempt from the UDTPA. The Court concludes that absent actions "in or affecting commerce," Plaintiff's unfair and deceptive trade practice claim under the UDTPA fails as a matter of law.

{52}     Having concluded that Plaintiff's unfair and deceptive trade practice claim fails as a matter of law under the securities exemption, the Court need not reach the Defendants' alternative argument under the intra-corporate dispute and joint venture exception to the UDTPA.

## IV.

## CONCLUSION

{53}     The Court hereby **GRANTS** Defendants' Motion to Dismiss with respect to Plaintiff's claim under the UDTPA. Wherefore, the Court hereby **DISMISSES** the fourth claim for relief in Plaintiff's complaint for unfair and deceptive trade practices.

**SO ORDERED** this the 29th day of July, 2011.