DeGorter v. Capitol Bancorp Ltd., 2014 NCBC 62.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

DAVID J. DeGORTER,

        Plaintiff,

    v.

CAPITOL BANCORP LTD, CAPITOL
WEALTH, INC. d/b/a/ CAPITOL WEALTH
ADVISORS, and CAPITOL NATIONAL
BANK, N.A.,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 20825

ORDER AND OPINION

{1}    **THIS MATTER** is before the Court upon Plaintiff David J. DeGorter's ("Plaintiff") Motion to Reconsider, or in the Alternative, to Amend the Pleadings (hereinafter demarcated as "Motion to Reconsider" and "Motion to Amend"); and Defendant Capitol National Bank, N.A.'s ("National") Motion for Attorneys' Fees (collectively, the "Motions") in the above-captioned case.

{2}    The Court, having considered the Motions, affidavits and supporting briefs, as well as the arguments of counsel at the October 15, 2014 hearing in this matter, hereby **DENIES** Plaintiff's Motion to Reconsider; **DENIES** Plaintiff's Motion to Amend; and **GRANTS** National's Motion for Attorneys' Fees.

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Jeffrey E. Oleynik, Clint S. Morse, and Jennifer K. Van Zant, for Plaintiff David J. DeGorter.*

*Smith Moore Leatherwood LLP, by Heather C. White, William R. Forstner, and Jonathan P. Heyl, for Defendant Capitol National Bank, N.A.*

Bledsoe, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

{3}    The Court makes its findings as set forth herein to address only those matters necessary for purposes of resolving the present Motions.  For additional detail concerning the facts and procedural history giving rise to this matter, *see DeGorter v. Capitol Bancorp Ltd.*, 2011 NCBC 28 (N.C. Super. Ct. July 29, 2011), http://www.ncbusinesscourt.net/opinions/2011_NCBC_28.pdf (dismissing Plaintiff's claim for unfair and deceptive trade practices) ("July 2011 Order").

{4}    Defendant Capitol Bancorp Ltd. ("Bancorp") is a holding company in the business of community bank development nationwide.[1]  (*Id.* ¶ 8.)

{5}    National and Defendant Capitol Wealth, Inc. ("Wealth") were at all times relevant to this matter wholly-owned subsidiaries of Bancorp.  (*Id.*)

{6}    Plaintiff was the sole and managing member of DeGorter Capital Partners, LLC ("DeGorter Capital") at all times relevant to this matter.  (*Id.* ¶ 9.)

{7}    In late 2007, Plaintiff (through DeGorter Capital), Bancorp, and Wealth entered into an arrangement to acquire Forethought Federal Savings Bank ("Forethought").  (*Id.* ¶¶ 10–13.)

{8}    The contemplated acquisition, however, was subject to regulatory approval by the Federal Reserve Board.  (*Id.* ¶ 14.)

{9}    The Federal Reserve Board's assessment of the proposed transaction included consideration of Bancorp's financial condition.  (*Id.* ¶ 16.)

---

[1] As discussed further *infra*, Bancorp has filed for bankruptcy since the onset of this litigation.

{10} Plaintiff alleges that in order to improve the appearance of Bancorp's financial condition – and thus increase the likelihood of securing regulatory approval for the Forethought acquisition – Plaintiff was solicited by a Wealth representative to make a substantial purchase of Bancorp's trust preferred securities. (*Id.* ¶¶ 17–20.)

{11} Plaintiff alleges that he was assured by the Wealth representative that Bancorp would redeem the securities from him once the Forethought acquisition had been completed. (*Id.* ¶ 20.)

{12} Plaintiff purchased $1.5 million worth of Bancorp trust preferred securities, financing 100% of the purchase price with the proceeds of two loans extended to him by Bancorp's subsidiary, National. (*Id.* ¶¶ 19–21.)

{13} The loans from National to Plaintiff consisted of a secured loan of $1,050,000 and an unsecured loan of $450,000. (*Id.* ¶ 21.)

{14} The $450,000 loan is not at issue in this action.

{15} The $1,050,000 loan is governed by the terms of two written agreements, the first executed by Plaintiff and National on July 3, 2008 and the second executed by Plaintiff and National on July 3, 2009 (together, "the Credit Agreements").

{16} Each of the Credit Agreements includes a choice-of-law provision specifying that the Agreements are to be governed by Michigan law. The parties do not dispute that the Credit Agreements are governed by Michigan law.

{17} Each of the Credit Agreements also includes a provision requiring that Plaintiff pay any legal costs, including reasonable attorneys' fees, incurred by

National to collect on the loans in the event of Plaintiff's default. The parties do not dispute that the Credit Agreements provide for recovery of legal costs.

{18} Plaintiff does, however, contend that he would not have entered into the Credit Agreements without the Wealth representative's assurance that Bancorp would repurchase the securities from Plaintiff once the Forethought acquisition had been completed. (July 2011 Order at ¶¶ 19–20.)

{19} The acquisition of Forethought ultimately fell through due to Bancorp's ailing financial condition, of which Plaintiff alleges he was unaware at the time he agreed to purchase the Bancorp securities. (*Id.* ¶¶ 25–26.)

{20} The Bancorp securities dropped in market value from $10 per share, at the time Plaintiff purchased them, to $1.85 per share on October 28, 2010, when Plaintiff filed his Complaint in this action. (*Id.* ¶¶ 3, 27.)

{21} Plaintiff's Complaint asserts claims against Bancorp, Wealth, and National (collectively, "Defendants") for constructive fraud, negligent misrepresentation, and unfair and deceptive trade practices, and a claim for breach of fiduciary duty against Bancorp and Wealth. (Compl. ¶¶ 64–95.) Essentially, Plaintiff alleges that Defendants colluded to fraudulently induce him into purchasing the Bancorp securities for the sole purpose of "rais[ing] sufficient capital to allow . . . Bancorp to continue its bank acquisition business for a short period of additional time." (Pl.'s Br. Supp. Mot. to Reconsider, p. 3.)

{22}    Defendants filed their Answer to Plaintiff's Complaint on January 10, 2011, raising numerous defenses and asserting a counterclaim – on behalf of National – against Plaintiff for breach of contract.

{23}    National's breach of contract counterclaim sought recovery of amounts allegedly owed by Plaintiff to National – $912,329.65 in unpaid principal plus accrued interest – as a result of Plaintiff's alleged default under the terms of the Credit Agreements.  National additionally sought an award of legal costs, including reasonable attorneys' fees incurred in this action, as provided for under the Credit Agreements.

{24}    This Court (Murphy, J.) dismissed Plaintiff's unfair and deceptive trade practices claim in an Opinion and Order entered July 29, 2011.  (July 2011 Order at ¶ 53.)

{25}    Defendants moved for summary judgment on Plaintiff's remaining claims against Defendants and on National's counterclaim against Plaintiff on January 19, 2012.

{26}    On August 9, 2012, Bancorp filed a petition for voluntary relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Michigan.  National represented at the October 15, 2014 hearing that Bancorp will not emerge from the bankruptcy proceedings as a viable entity.

{27}    On June 26, 2014, this Court (Murphy, J.) entered an Order ("Summary Judgment Order") in which the Court (i) deferred ruling on Defendants' Motion for

Summary Judgment with respect to Plaintiff's claims against Bancorp and Wealth in light of Bancorp's bankruptcy proceedings and "the related nature of claims brought against Bancorp and Wealth as well as their interconnected structure"; (ii) granted Defendants' Motion for Summary Judgment with respect to Plaintiff's constructive fraud and negligent misrepresentation claims against National, thereby dismissing those claims with prejudice; and (iii) granted National's Motion for Summary Judgment on its breach of contract counterclaim against Plaintiff. (Summary Judgment Order, p. 2–5.)

{28}   The Summary Judgment Order further provided that "National shall have and recover from Plaintiff the principal sum of $912,329.65, accrued interest in the amount of $61,600.40 and interest accruing since January 17, 2012 at a daily rate of $81.01287 until the judgment is satisfied in full," and that "[w]ithin 45 days from the entry of this Order, National may move for attorney's fees pursuant to the loan agreement and controlling law." (*Id.* at p. 5.)

{29}   National, accordingly, filed its Motion for Attorneys' Fees on August 11, 2014, seeking attorneys' fees and costs as provided for under the Credit Agreements.

{30}   On August 29, 2014, Plaintiff moved the Court to reconsider its Summary Judgment Order or, alternatively, to allow Plaintiff to amend his Complaint to assert a claim against Defendants for civil conspiracy.

{31}   The Court held a hearing on Plaintiff's Motion to Reconsider and Motion to Amend and on National's Motion for Attorneys' Fees on October 15, 2014.

II.

ANALYSIS

A.

Plaintiff's Motion to Reconsider

{32}    Plaintiff asks this Court to revisit Judge Murphy's Summary Judgment Order on grounds that the undersigned's appointment, when paired with Plaintiff's filing of his Motion for Reconsideration, constitutes "changed circumstances" sufficient to warrant reconsideration.

{33}    This Court has recently reiterated that "'[o]ne superior court judge may only modify, overrule, or change the order of another superior court judge where the original order was (1) interlocutory, (2) discretionary, and (3) there has been a substantial change of circumstances since the entry of the prior order.'" *Taidoc Tech. Corp. v. OK Biotech Co., Ltd.*, 2014 NCBC 48 at ¶ 11 (N.C. Super. Ct. Oct. 9, 2014), http://www.ncbusinesscourt.net/opinions/2014_NCBC_48.pdf (quoting *Crook v. KRC Mgmt. Corp.*, 206 N.C. App. 179, 189, 697 S.E.2d 449, 456 (2010)). "'A substantial change in circumstances exists if since the entry of the prior order, there has been an intervention of new facts which bear upon the propriety of the previous order. The burden of showing the change in circumstances is on the party seeking a modification or reversal of an order previously entered by another judge.'" *Id.* (citation omitted).  "Accordingly, 'where the trial court fails to find that there has been a material change in circumstances, it has no authority to modify the order of another judge.'" *Id.* (citations omitted).

{34}    Here, the Summary Judgment Order was both interlocutory, as it did not dispose of Plaintiff's claims against Bancorp or Wealth, *see Veazey v. City of Durham*, 231 N.C. 357, 361–62, 57 S.E.2d 377, 381 (1950) (providing that an interlocutory order as one that "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy"), and discretionary.

{35}    The Court, however, discerns no "substantial change of circumstances" since Judge Murphy's entry of the Summary Judgment Order that would permit its reconsideration.  To accept Plaintiff's contention that (i) the undersigned's appointment and (ii) the filing of Plaintiff's Motion to Reconsider, together, constitute sufficient grounds for reconsideration would be to "open the floodgates" and invite reconsideration of numerous matters decided in the months preceding the undersigned's appointment.

{36}    Plaintiff relies on *Ruff v. Parex, Inc.*, 1999 NCBC 6 (N.C. Super. Ct. June 17, 1999), http://www.ncbusinesscourt.net/opinions/1999%20NCBC%206.htm, and *Wachovia Bank v. Harbinger Capitol Partners Master Fund I, Ltd.*, 2008 NCBC 6 (N.C. Super. Ct. March 13, 2008), http://www.ncbusinesscourt.net/opinions/2008%20NCBC%206.pdf, in support of his contention that, unlike the typical case of forum shopping in which one superior court judge is asked to overrule another superior court judge, here the undersigned possesses case management authority that permits reconsideration of the Summary Judgment Order.

{37} *Ruff* and *Harbinger*, however, involved instances in which the action commenced in regular superior court, then was subsequently transferred to this Court, at which time the assigned Business Court judge was tasked with case management responsibilities in effectuating the transition. Here, in contrast, the undersigned is not receiving this case into the Business Court for the first time; Judge Murphy has already done so. The undersigned's assumption of the Court's case management responsibilities does not in and of itself constitute an "intervention of new facts which bear upon the propriety of the [Summary Judgment Order]." *Taidoc Tech. Corp.,* 2014 NCBC 48 at ¶ 11. And neither Plaintiff's additional step of filing his Motion for Reconsideration nor the interlocutory nature of the Summary Judgment Order alters this conclusion.

{38} Moreover, unlike here, *Ruff* involved a class action "where determinations can change or develop as the case progresses" and addressed the inevitable tension for case management that is created when, as in *Ruff*, a class is certified by a regular superior court judge prior to designation of the case to the Business Court. *Ruff*, 1999 NCBC 6 at ¶ 4. In addition, and again unlike in the instant case, in *Harbinger,* the Court found "changed circumstances" sufficient to modify the preliminary injunction entered by the prior superior court judge where the defendants subsequently filed a federal court action in New York, which Judge Diaz found to be a "convenient, reasonable, fair, and more comprehensive forum for the resolution of this litigation[.]" *Harbinger*, 2008 NCBC 6 at ¶¶ 114—15. In short, the instant case simply does not involve the considerations motivating the Business

Court judges in *Ruff* and *Harbinger* to modify the prior superior court judge's orders in those actions.

{39} The Court, therefore, finds this matter to fall squarely within the general rule that one superior court judge may not "modify, overrule, or change the order of another superior court judge." *Taidoc Tech. Corp.*, 2014 NCBC 48 at ¶ 11.

{40} Plaintiff also seeks clarification of the Summary Judgment Order. Specifically, Plaintiff points to the portion of the Summary Judgment Order in which Judge Murphy states the following:

> Indeed, Plaintiff freely admits that he never even spoke to anyone at National until after the loans were approved. And, although there is evidence that National is a wholly-owned subsidiary of Bancorp, Plaintiff refutes any allegation that National was involved in the alleged joint venture between it, Bancorp, and Wealth. Further, *Plaintiff alleges no claim for conspiracy* or piercing the corporate veil that might implicate National in either Wealth or Bancorp's interactions with Plaintiff.

(Summary Judgment Order, p. 3.) (Emphasis added.)

{41} In *Taidoc*, this Court stated that although it is "not permitted to modify, overrule or change [a prior Order], the Court . . . does have the authority to interpret, construe and enforce [a prior Order] according to its terms." *Taidoc Tech. Corp.*, 2014 NCBC 48 at ¶ 13 (*citing Morley v. Morley,* 102 N.C. App. 713, 716, 403 S.E.2d 574, 575 (1991), for the proposition that "one Superior Court Judge may construe an order entered by another Superior Court Judge"). The Court found that the Order under review was "potentially capable of differing interpretations" and thus expounded on its meaning in order to "assist the fair and efficient administration of justice." *Id.* at ¶¶ 14–18.

{42} Here, the Court construes the above-quoted language from the Summary Judgment Order as Judge Murphy's observation that Plaintiff had not alleged a claim for conspiracy in his complaint and that this fact, in conjunction with the totality of the record evidence, supported dismissal of Plaintiff's claims against National. The Court does not otherwise find the Summary Judgment Order ambiguous or in need of clarification.

{43} In light of the foregoing, the Court **DENIES** Plaintiff's Motion to Reconsider.

B.

Plaintiff's Motion to Amend

{44} Plaintiff seeks to amend his Complaint to assert a claim against Defendants – including National – for civil conspiracy. Plaintiff contends that the proposed amendment is supported by the evidence and would not prejudice National because its substance was disclosed in Plaintiff's original Complaint.

{45} "Under Rule 15 [of the North Carolina Rules of Civil Procedure], leave to amend 'shall be freely given where justice so requires.'" *Paradigm Fin. Grp., Inc. v. Church*, 2014 NCBC 33 at ¶ 14 (N.C. Super. Ct. July 24, 2014), http://www.ncbusinesscourt.net/opinions/2014_NCBC_33.pdf (quoting N.C. Gen. Stat. § 1A-1, Rule 15). "However, a court may deny a motion for leave to amend a pleading based on the movant's 'undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of the amendment.'" *Id.* (citations omitted). Thus, "[a]lthough the spirit of the North Carolina Rules of Civil Procedure is to permit parties to proceed on the merits without the strict and

technical pleading rules of the past, the rules still provide some protection for parties who may be prejudiced by liberal amendment." *Henry v. Deen*, 310 N.C. 75, 82, 310 S.E.2d 326, 331 (1984). "'A motion to amend is addressed to the [sound] discretion of the trial court.'" *Isenhour v. Universal Underwriters Ins. Co.*, 345 N.C. 151, 154, 478 S.E.2d 197, 199 (1996) (citation omitted) (alteration in original).

{46}   National cites *Chrisalis Properties, Inc. v. Separate Quarters, Inc.*, 101 N.C. App. 81, 89, 398 S.E.2d 628, 634 (1990), for the proposition that "once judgment is entered amendment of the complaint is not allowed unless the judgment is set aside or vacated under Rule 59 or Rule 60." National also cites *Sentry Enters., Inc. v. Canal Wood Corp.*, 94 N.C. App. 293, 298, 380 S.E.2d 152, 155 (1989) (emphasis in original), for the proposition that a "trial judge ha[s] no authority to grant leave to amend [a complaint] *after* summary judgment [is] entered against plaintiff." The *Sentry* court, however, explicitly relied on the fact that the summary judgment order that preceded the plaintiff's motion to amend in that case was a *final* judgment. *Id.* ("Once the trial court enters *final* judgment in the case, the trial court lacks the authority to grant leave to amend under Rule 15. Summary judgment was a *final* judgment in this case because it disposed of all of plaintiff's claims." (Citations omitted and emphases added)). Because the Summary Judgment Order here was not a final judgment, but rather an interlocutory order, the general rule prohibiting a plaintiff's post-judgment amendment to the complaint – as articulated in *Chrisalis* and *Sentry* – is not controlling.

{47}  Plaintiff points to *Hawkins v. Houser*, 91 N.C. App. 266, 371 S.E.2d 297 (1988), a case in which the North Carolina Court of Appeals determined that the plaintiffs' complaint could properly be amended post-summary judgment where the original complaint notified the defendants of the events underlying the added claim and therefore sufficiently enabled the defendants to prepare a defense against it. *Id.* at 270, 371 S.E.2d at 300.  The *Hawkins* court, however, merely permitted the plaintiffs to add facts to their complaints to support their already existing negligence claim, reasoning that the complaints' "deficiency [was] not automatically fatal to plaintiffs' actions, as it would have been under our former procedure, because under our modern notice pleading system amendments to the pleadings are liberally permitted when the evidence and circumstances warrant, even at trial." *Id.* at 268–70, 371 S.E.2d at 299–300.  Here, in contrast, Plaintiff seeks to assert an entirely new claim for relief – civil conspiracy – against all Defendants.

{48}  In any event, the import of the Summary Judgment Order, when read in its entirety, is clear:  Judge Murphy reviewed Plaintiff's evidence and determined that although National was a Bancorp subsidiary and had issued the loans in question to Plaintiff, the evidence failed to demonstrate that any of National's alleged conduct – whether acting alone or in collusion with Bancorp and/or Wealth – had caused Plaintiff's claimed injury.  Consequently, this Court is prohibited from granting Plaintiff the requested relief, as to do so would, in effect, require this Court to overrule Judge Murphy's prior Order.  Stated differently, Plaintiff's success on a conspiracy claim against National based on the existing evidence – and Plaintiff

concedes no additional discovery would be necessary to support his conspiracy claim – would ultimately require this Court to reach conclusions in contravention of those embodied in the Summary Judgment Order.

{49}  Moreover, even if the Court were able to entertain Plaintiff's Motion to Amend, the Court finds, in its discretion, that Plaintiff's Motion to Amend is untimely. *Draughon v. Harnett Cnty. Bd. of Educ.*, 166 N.C. App. 464, 467, 602 S.E.2d 721, 724 (2004) ("In deciding if there was undue delay, the trial court may consider the relative timing of the proposed amendment in relation to the progress of the lawsuit.").  Plaintiff brings this request nearly four years after filing his original Complaint, seeking to append allegations and a civil conspiracy claim based on conduct that was known to Plaintiff at the time he filed his Complaint.  Allowing these amendments, at this stage of the proceedings, would cause substantial prejudice to National, as National has already successfully defended against Plaintiff's claims and prevailed on its counterclaim against Plaintiff. *See, e.g.*, *Wilkerson v. Duke Univ.*, 748 S.E.2d 154, 161 (N.C. Ct. App. 2013) (affirming trial court's denial of plaintiff's motion to amend complaint brought "thirteen months after he filed the initial complaint and only five days *before* the hearing on defendants' motion for summary judgment" (emphasis added)); *Wall v. Fry*, 162 N.C. App. 73, 80, 590 S.E.2d 283, 287 (2004) (affirming trial court's denial of plaintiffs' motion to amend filed after defendants moved for summary judgment and nearly fourteen months after plaintiffs filed their original complaint).

{50}  Finally, the Court notes that in North Carolina "there is no such thing as a civil action for conspiracy." *Reid v. Holden*, 242 N.C. 408, 414, 88 S.E.2d 125, 130 (1955).  Rather, "[t]he action is for damages caused by acts committed pursuant to a formed conspiracy, [not] by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone." *Id.*  Because Judge Murphy found the evidence insufficient to support Plaintiff's constructive fraud and negligent misrepresentation claims against National and dismissed those claims with prejudice, there remain no claims against National that could serve as the requisite underlying basis for Plaintiff's civil conspiracy theory of recovery.  *See, e.g., Piraino Bros., LLC v. Atl. Fin. Grp., Inc.,* 211 N.C. App. 343, 350, 712 S.E.2d 328, 333–34 (2011) ("Where this Court has found summary judgment on the underlying tort claims to be proper, we have held that a plaintiff's claim for civil conspiracy must also fail.").  Therefore, Plaintiff's Motion to Amend additionally fails on futility grounds.

{51}  In sum, the Court declines Plaintiff's request to revive his action against National through the proposed post-judgment amendments to his Complaint, and Plaintiff's Motion to Amend is, accordingly, **DENIED**.

C.

National's Motion for Attorneys' Fees

{52}  National seeks recovery of its costs, including reasonable attorneys' fees, incurred in this action.  This request follows from National's successful defense against Plaintiff's claims; National's success on its breach of contract counterclaim against Plaintiff; and Judge Murphy's statement in the Summary Judgment Order

that "[w]ithin 45 days from the entry of this Order, National may move for attorney[s'] fees pursuant to the loan agreement and controlling law." (Summary Judgment Order, p. 5.)

{53}   Plaintiff does not dispute that the Credit Agreements provide for the recovery of attorneys' fees in the event of Plaintiff's default as follows:

> Collection Costs: We may hire or pay someone else to help collect this Agreement if you do not pay.  You will pay us that amount.  This includes, subject to any limits under applicable law, our reasonable attorneys' fees and our legal expenses whether or not there is a lawsuit[.] . . .  If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.[2]

{54}   Further, the parties agree that the Credit Agreements each contain the following choice-of-law provision designating Michigan law as governing for purposes of resolving this Motion:

> Governing Law.  This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of Michigan without regard to its conflicts of law provisions.  This Agreement has been accepted by us in the State of Michigan.[3]

{55}   Plaintiff also concedes that a contract may serve as a valid basis for an award of attorneys' fees under Michigan law.  Indeed, the Court of Appeals of Michigan has stated the following with respect to the recovery of attorneys' fees provided for by contract:

> As a general rule, attorney[s'] fees are not recoverable as an element of costs or damages absent an express legal exception. Exceptions to the general rule are narrowly construed. An exception exists where attorney fees are provided by contract of the parties.  Contractual

---

[2] This provision is worded identically in each of the Credit Agreements.

[3] This provision is worded identically in each of the Credit Agreements.

provisions for payment of reasonable attorney fees are judicially enforceable.

*Fleet Bus. Credit v. Krapohl Ford Lincoln Mercury Co.*, 274 Mich. App. 584, 599, 735 N.W.2d 644, 647 (2007).

{56} Plaintiff contends, however, that National's evidence is insufficient to support an award of attorneys' fees because it fails to describe adequately the arrangement among Defendants concerning the apportionment of Defendants' collective legal costs incurred in connection with this action.

{57} National has filed with the Court the following submissions in support of its Motion for Attorneys' Fees: the Credit Agreements; an Affidavit of Attorneys' Fees from Heather C. White of the law firm Smith Moore Leatherwood LLP ("Smith Moore"), which has represented all Defendants, including National, throughout this action; a Supplemental Affidavit of Attorneys' Fees, also submitted by Ms. White; Smith Moore's billing records documenting the hours billed by Smith Moore in connection with this action; and the affidavit of Paula D. Cunningham, National's President and CEO.

{58} Ms. Cunningham states in her affidavit that Defendants Bancorp, National, and Wealth "agreed to share the costs of the defense of this lawsuit, and apportion the percentages to reflect Capitol National's counterclaims. . . . As such, Capitol National agreed to pay, and has paid, fifteen percent (15%) of the total accumulated attorneys' fees and costs charged by [Smith Moore]." (Cunningham Aff. ¶¶ 4–5.) Ms. Cunningham further states that "[a]s apportioned to its

counterclaim, Capitol National has incurred and paid approximately $29,466.12 in legal fees and costs." (*Id.* ¶ 6.)

{59}  Ms. White represented to the Court at the October 15, 2014 hearing that Defendants entered into this arrangement, pursuant to which National agreed to pay fifteen percent of Defendants' total attorneys' fees and costs, at the outset of litigation in this action.

{60}  The Court finds Plaintiff's contentions unpersuasive and concludes that National's evidence is sufficient to support an award of attorneys' fees and costs. The Court further concludes that Defendants' agreement to allocate fifteen percent of Defendants' costs to National was reasonable under the circumstances.[4]  As indicated by Ms. Cunningham's statements in her affidavit, Bancorp had a strong interest in defending against not only Plaintiff's claims against Bancorp, but also Plaintiff's claims against its subsidiaries, Wealth and National, and thus, aside from National's counterclaim against Plaintiff, sought to bear the burden of Defendants' costs in this action.

{61}  Accordingly, the Court concludes that National is entitled to an award of attorneys' fees and costs, and the sole issue remaining is whether the amount of the award requested is reasonable.

---

[4]  Plaintiff contends that National's low share of Defendants' total costs should be seen as further proof of conspiracy.  Applied to National's attorneys' fees argument, however, Plaintiff's contention that National should bear a larger portion of Defendants' legal costs posits, in effect, that National should be entitled to *more* attorneys' fees than National is presently seeking.

{62}  "[T]he burden of proving the reasonableness of the requested fees rests with the party requesting them." *Smith v. Khouri*, 481 Mich. 519, 528—29, 751 N.W.2d 472, 478 (2008) (citation omitted).  "In Michigan, the trial courts have been required to consider the totality of special circumstances applicable to the case at hand."  *Id.* at 529, 751 N.W.2d at 478 (citations omitted).

{63}  In *Crawley v. Schick*, 48 Mich. App. 728, 211 N.W.2d 217 (1973), the Court of Appeals of Michigan set forth factors for determining reasonable attorneys' fees as follows:

> There is no precise formula for computing the reasonableness of an attorney's fee. However, among the facts to be taken into consideration in determining the reasonableness of a fee include, but are not limited to, the following: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

*Id.* at 737, 211 N.W.2d at 222.

{64}  In *Wood v Detroit Automobile Inter-Ins. Exchange,* 413 Mich. 573, 321 N.W.2d 653 (1982), the Michigan Supreme Court indicated that "[w]hile a trial court should consider the guidelines of *Crawley*, it is not limited to those factors in making its determination."  *Id.* at 588, 321 N.W.2d at 661.  For instance, as noted in *Smith*:

> The trial courts have also relied on the eight factors listed in Rule 1.5(a) of the Michigan Rules of Professional Conduct, . . . which overlap the *Wood* [i.e., *Crawley*] factors and include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee

customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Smith*, 481 Mich. at 529—30, 751 N.W.2d at 479.

{65}  In the present case, Plaintiff does not contest the professional standing, experience, skill, hours billed, or the rates charged by the Smith Moore attorneys who represented National in connection with this matter.  Indeed, Plaintiff does not appear to challenge any of the above-quoted factors, as his primary challenge to the reasonableness of National's requested attorneys' fees is directed at the fee-splitting arrangement among Defendants.[5]

{66}  The Supplemental Affidavit of Attorneys' Fees indicates that Smith Moore has billed Defendants collectively for attorneys' fees in the amount of $184,865.  (Supp. Aff. Atty. Fees ¶ 4.)  Exhibit A to the affidavit, which sets forth Smith Moore's itemized billing records in connection with its representation of Defendants in this action, also reflects total attorneys' fees of $184,865, as well as total billed expenses of $11,845.69.

---

[5] Plaintiff submits that the Court should apply the attorneys' fees analysis as described in *Smith*, whereby the trial court must determine the "reasonable hourly rate [representing] the fee customarily charged in the locality for similar legal services" based on "reliable surveys or other credible evidence of the legal market," then multiply that rate by the "reasonable number of hours expended in the case" and, finally, "briefly discuss [the Court's] view of the remaining [*Crawley* and Michigan Rules of Professional Conduct] factors" and whether such factors justify an adjustment to reach a reasonable attorneys' fee award.  *Smith*, 481 Mich. at 531, 751 N.W.2d at 479–80.  The *Smith* analysis, however, appears to be mandatory only in the context of determining reasonable attorneys' fees under a specific statutory provision, MCR 2.403(O), which is not implicated here.

{67} Applying Defendants' apportionment of costs, the propriety of which the Court has found reasonable above, National has incurred attorneys' fees in the amount of $27,729.75 (fifteen percent of $184,865)[6] and additional costs in the amount of $1,776.86 (fifteen percent of $11,845.69).

{68} The Summary Judgment Order, as indicated above, entitles National to "recover from Plaintiff the principal sum of $912,329.65, accrued interest in the amount of $61,600.40 and interest accruing since January 17, 2012 at a daily rate of $81.01287 until the judgment is satisfied in full." National has therefore incurred total attorneys' fees and costs of only $29,506.61 ($27,729.75 attorneys' fees plus $1,776.86 costs) to recover essentially a $1 million judgment against Plaintiff.

{69} Moreover, the Court has reviewed, line-by-line, the detailed billing records submitted by Smith Moore in National's Exhibit A to its Supplemental Affidavit of Attorneys' Fees. Exhibit A reveals the rates and hours billed by the Smith Moore attorneys who performed work in this case as follows:

a. Jonathan P. Heyl

   i. Rate: $325 to $360

   ii. Hours: 20.9

   iii. Fees: $7,327.50

---

[6] It appears there is either a minor error or an unexplained credit in the attorneys' fees calculation set forth in National's reply brief, which "requests . . . reasonable attorneys' fees in the amount of $27,959.25 . . . ." (Pl.'s Reply Br., p. 6.) Both National's Supplemental Affidavit of Attorneys' Fees and Smith Moore's billing records, attached as Exhibit A to the Supplemental Affidavit, reflect $184,865 as the total attorneys' fees billed to Defendants. Fifteen percent of $184,865 is $27,729.75, which is $229.50 less than the attorneys' fees requested by National.

b. Heather C. White

    i. Rate: $260 to $300

    ii. Hours: 434.5

    iii. Fees: $120,642.50

c. William R. Forstner

    i. Rate: $260 to $300

    ii. Hours: 30.3

    iii. Fees: $8,050

d. William L. Pitman

    i. Rate: $400

    ii. Hours: 0.7

    iii. Fees: $280

e. Matthew Leerberg

    i. Rate: $225 to $235

    ii. Hours: 20

    iii. Fees: $4,636

f. Craig Turner

    i. Rate: $200

    ii. Hours: 41.6

    iii. Fees: $8,320

g. David Gomez

    i. Rate: $150 to $200

   ii. Hours: 57.7

   iii. Fees: $8,805

  h. Devire Robinson

   i. Rate: $220 to $260

   ii. Hours: 120.8

   iii. Fees: $26,804

{70}   By way of comparison, the Court notes statistics compiled in a 2013 National Law Journal Billing Survey (December 2013), in which the billing rates of two leading Michigan law firms comparable in size to Smith Moore are detailed as follows:

  i. Butzel Long (125 attorneys)

   i. Partner average billing rate: $440

   ii. Associate average billing rate: $305

  j. Honigman Miller Schwartz and Cohn (227 attorneys)

   i. Partner average billing rate: $390

   ii. Associate average billing rate: $220

{71}   The Court finds the rates billed by Smith Moore, a leading North Carolina law firm, reasonable. The Court further finds none of the hours billed "excessive, redundant or otherwise unnecessary." *See Smith*, 481 Mich. at 532, 751 N.W.2d at 480 (providing that "in determining hours reasonably expended, the Court should exclude 'excessive, redundant or otherwise unnecessary' hours regardless of the attorneys' skill, reputation or experience" (citations omitted)). The fact that Smith

Moore's itemized billing records do not distinguish hours billed for work performed on National's defense against Plaintiff's claims from hours billed for work performed on National's counterclaim against Plaintiff does not detract from the reasonableness of the fees charged given the interconnected nature of these claims.

{72}  Accordingly, in light of the results achieved and the overall context of the case, the Court finds an award of attorneys' fees of $27,729.75 and costs of $1,776.86 reasonable.

III.
CONCLUSION

{73}  **IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED** as follows:

   a. Plaintiff's Motion for Reconsideration is **DENIED**;

   b. Plaintiff's Motion to Amend is **DENIED**;

   c. National's Motion for Attorneys' Fees is **GRANTED** as provided herein;

   d. Within fourteen (14) days from entry of this Order, Plaintiff shall remit to National the total sum of $29,506.61.

   e. All other requested relief is **DENIED**.


**SO ORDERED**, this the 26th day of November, 2014.