J. TRAVIS SKINNER AND BARBARA R. SKINNER v. E. F. HUTTON & COMPANY, INC., JOHN HUDSON, AND DONALD FONTES

No. 614A84

(Filed 13 August 1985)

1. **Actions § 5; Corporations § 16.1— insider information—action against stockbrokers—in pari delicto doctrine inapplicable**

    The fact that a plaintiff has dealt in securities for gain upon purported inside information will not give rise to the common law defense of *in pari delicto* in an action under state law against a corporate insider or securities professional who provided the information.

2. **Corporations § 16.1; Unfair Competition § 1— unfair trade practices statute— inapplicability to securities transactions**

    Securities transactions are beyond the scope of the unfair trade practices statute, G.S. 75-1.1.

APPEAL by the plaintiffs under N.C.G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals, 70 N.C. App. 517, 320 S.E. 2d 424 (1984), affirming in part and reversing in part an order entered by *Judge Henry V. Barnette, Jr.* on August 8, 1983, in Superior Court, DURHAM County. Heard in the Supreme Court on April 8, 1985.

*Haythe & Curley, by Samuel T. Wyrick, III, Christie Speir Price and James Arthur Pope, for the plaintiff appellants.*

*Manning, Fulton & Skinner, by Howard E. Manning and Michael T. Medford, for the defendant appellees.*

*Thad Eure, Secretary of State, amicus curiae, by Eugene J. Cella, Staff Attorney.*

MITCHELL, Justice.

[1] The primary issue presented is whether the doctrine of *in pari delicto* provides a defense to claims under state law when

defendant stockbrokers induce plaintiffs to buy securities by representing that they have "inside information" which will result in those securities increasing in value. We conclude that the mere fact that the plaintiffs in such cases have attempted to act upon inside information unlawfully does not cause the doctrine of *in pari delicto* to raise an affirmative defense which will defeat otherwise valid claims for relief asserted under state law. We also must decide whether securities transactions are beyond the scope of N.C.G.S. 75-1.1 prohibiting unfair trade practices. We conclude that securities transactions are beyond the scope of that statute.

In their complaint the plaintiffs Skinners allege in pertinent part that they maintained general margin accounts with the defendant E. F. Hutton and Company, Inc. for their stock trading. In 1981 the defendants Hudson and Fontes, registered representatives and account executives with E. F. Hutton, encouraged the plaintiffs to "load up" on securities in two companies the defendants represented as take-over candidates. The defendant Fontes told Travis Skinner that he had "inside information that corporate take-overs were imminent that would shortly drive up the price of Washington National Corporation [hereinafter WNT] and Academy Insurance Group [hereinafter ACIG] which securities were being traded either on an exchange or over the counter." Relying on the advice of Hudson and Fontes that take-overs of WNT and ACIG definitely were going to take place soon, the Skinners purchased 3,850 shares of WNT for $109,850 and 4,100 shares of ACIG for $81,484 through their margin accounts at E. F. Hutton.

Fontes told the plaintiffs that the WNT take-over would take place by the end of May 1981. No such take-over occurred nor did the price of the WNT securities increase. Hudson and Fontes first told the plaintiffs that the ACIG take-over would occur by July 28, 1981. After that date had passed they stated that the take-over of ACIG would be complete by August 28, 1981. This did not occur. No take-over occurred.

The plaintiffs also allege in their complaint that on at least two occasions they could have sold a good number of their WNT shares at a substantial profit. They did not due to Fontes' strong urging not to sell and his representations that the WNT take-over was imminent and certain. In order "[t]o cut their losses and free

Skinner v. E. F. Hutton & Co.

their capital by the year end, Plaintiffs sold all their holdings in WNT and ACIG in October, November and December 1981, absorbing losses of at least $47,526.84 in stock losses, brokers' commissions, margin interest, and a margin call." The plaintiffs allege that these losses are the direct result of their reliance to their detriment on the false representations of the defendants.

The plaintiffs seek to recover on alternative claims for relief for fraud, constructive fraud and negligent misrepresentation. They seek both compensatory and punitive damages. They also seek treble damages under N.C.G.S. 75-16 and reasonable attorney's fees under N.C.G.S. 75-16.1 upon the theory that their allegations establish that the plaintiffs have committed unfair or deceptive acts or practices in violation of N.C.G.S. 75-1.1. By their complaint the plaintiffs also seek to have the defendants held jointly and severally liable.

The trial court held that the "plaintiffs' purported claims are barred as a matter of law by the doctrine of *in pari delicto*, except as to commissions and margin interest received by Defendants." The plaintiffs appealed. The defendants cross appealed and assigned as error the trial court's failure to dismiss all of the plaintiffs' claims. Although stating that the appeals were interlocutory in nature, the Court of Appeals chose to treat them as though "allowed under certiorari and to review the parties' appeals on their merits." 70 N.C. App. at 518, 320 S.E. 2d at 425. The majority of the panel in the Court of Appeals held "that the *in pari delicto* defense must work as a bar against all the claims for relief asserted by the plaintiffs, including those for commissions and margin interest." 70 N.C. App. at 522-23, 320 S.E. 2d at 428. Therefore, the Court of Appeals affirmed in part and reversed in part. One judge having dissented in the Court of Appeals, the plaintiffs appealed as a matter of right under N.C.G.S. 7A-30(2).

On appeal we review the holding of the Court of Appeals that the trial court was required to grant the defendants' motion to dismiss under N.C.G.S. 1A-1, Rule 12(b)(6) for failure to state any claim upon which relief might be granted. Such a motion tests the legal sufficiency of the complaint, and in ruling on "the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether

Skinner v. E. F. Hutton & Co.

the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E. 2d 611, 615 (1979). When the complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim, however, the motion will be granted and the action dismissed. *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E. 2d 161, 166 (1970). The defendants contend that the doctrine of *in pari delicto* causes the complaint in the present case to disclose just such an unconditional affirmative defense.

The defendants specifically contend that the complaint shows on its face that the plaintiffs were "tippees" who received and acted upon purported nonpublic "inside information" and took steps to profit by this knowledge to the exclusion of the general public. The defendants argue that such conduct by the plaintiffs violated *inter alia* antifraud provisions of The North Carolina Securities Act[1] such as N.C.G.S. 78A-8 and federal prohibitions against trading in securities on inside information, such as those contained in the general antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. For purposes of this appeal, we assume *arguendo* without deciding the question that the plaintiffs were "tippees"[2] and in violation of all pertinent provisions of North Carolina and federal law prohibiting trading in securities on inside information. Nevertheless, the doctrine of *in pari delicto* does not give rise to an affirmative defense requiring dismissal of the plaintiffs' claims.

The common law defense by which the defendants seek to shield themselves from liability in the present case arises from the maxim *in pari delicto potior est conditio possidentis [defendentis]* or "in a case of equal or mutual fault . . . the condition of the party in possession [or defending] is the better one." Black's Law Dictionary 711 (rev. 5th ed. 1979). The defense and the maxim describing it are products of Roman law. *See generally*

1. The plaintiffs have not sought to assert a claim under The North Carolina Securities Act, N.C.G.S. Chapter 78A, nor do they contend on this appeal that any such claim would have merit. We express no view as to whether the plaintiffs might have a claim under that Act.

2. The plaintiffs have argued that there was never any real "inside information" and that they could not therefore have been "tippees."

Grodecki, In Pari Delicto Potior Est Conditio Defendentis, 71 Law Q. Rev. 254 (1955). Under Roman law the defense was limited to contract actions to recover money paid under an illegal or immoral contract. *Id.* In such cases the Roman law left the parties as it found them. This Court and others, however, have not limited the defense to contract actions. In *Lloyd v. R. R.*, 151 N.C. 536, 540, 66 S.E. 604, 605-06 (1909), for example, this Court stated:

> It is very generally held — universally, so far as we are aware — that an action never lies when a plaintiff must base his claim, in whole or in part, on a violation by himself of the criminal or penal laws of the State. In Waite's Actions and Defenses, Vol. 1, p. 43, the principle is broadly stated as follows: "No principle of law is better settled than that which declares that an action cannot be maintained upon any ground or cause which the law declares to be illegal," . . . .

(Citations omitted.) *See also* 37 Am. Jur. 2d *Fraud and Deceit* § 303 (1968). Nevertheless, we reject the defense entirely in the present case.

In their complaint the plaintiffs seek to pursue only claims under North Carolina common law and statutes. Therefore, any question concerning whether the *in pari delicto* defense applies to those claims is a question exclusively of North Carolina law as to which this Court is authoritative and final. *White v. Pate*, 308 N.C. 759, 766, 304 S.E. 2d 199, 204 (1983); *Lea Co. v. N.C. Board of Transportation*, 308 N.C. 603, 610, 304 S.E. 2d 164, 170 (1983). *See Missouri v. Hunter*, 459 U.S. 359 (1983). However, we pay great deference in any event to decisions of the Supreme Court of the United States when they address issues similar to those before us in a given case.

In resolving the questions concerning the applicability of the *in pari delicto* defense to the plaintiffs' state law claims in the present case, we find the reasoning of a recent opinion of the Supreme Court of the United States compelling. In *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. ---, 86 L.Ed. 2d 215, 105 S.Ct. --- (1985), a securities broker and an officer of a corporation were alleged to have fraudulently induced investors to purchase stock in the corporation by divulging false and materially incomplete information about the corporation on the pretext that it was accurate inside information. The investors

brought a private action against the broker and corporate officer in United States District Court alleging that this scheme violated the Securities Exchange Act of 1934 and certain rules promulgated by the Securities and Exchange Commission. The District Court dismissed the complaint on the ground that, because the investors themselves had violated the same laws under which re-. covery was sought by trading on what they believed was inside information, they were *in pari delicto* with the broker and corporate insider and thus were barred from recovery. The United States Court of Appeals for the Ninth Circuit reversed, concluding that "securities professionals and corporate officers who have allegedly engaged in fraud should not be permitted to invoke the *in pari delicto* doctrine to shield themselves from the consequences of their fraudulent misrepresentations," even though the investors had violated federal securities laws themselves. *Berner v. Lazzaro*, 730 F. 2d 1319, 1320 (9th Cir. 1984). The Supreme Court affirmed.

In its opinion the Supreme Court pointed out that the *in pari delicto* defense traditionally has been narrowly limited to situations in which the plaintiff was *equally* at fault with the defendant. It then rejected the notion that an investor who engages in trading on purported inside information "is necessarily as blameworthy as a corporate insider or broker-dealer who discloses the information for personal gain. Notwithstanding the broad reach of [federal statutes and rules] there are important distinctions between the relative culpabilities of tippers, securities professionals, and tippees in these circumstances." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. ---, 86 L.Ed. 2d 215, 105 S.Ct. --- (1985). The Supreme Court then went on to state:

> Moreover, insiders and broker-dealers who selectively disclose material nonpublic information commit a potentially broader range of violations than do tippees who trade on the basis of that information . . . . *Such conduct is particularly egregious when committed by a securities professional,* who owes a duty of honesty and fair dealing toward his clients. *Cf.* 3 Pomeroy § 942a, at 741. Absent other culpable actions by a tippee that can fairly be said to outweigh these violations by insiders and broker-dealers, *we do not believe that*

*the tippee properly can be characterized as being of substantially equal culpability as his tippers.*

472 U.S. at ---, 86 L.Ed. 2d at 226-27, 105 S.Ct. at --- (emphasis added).

Based upon the previously quoted reasoning and other factors set forth in its opinion, the Supreme Court held:

Accordingly, a private action for damages in these circumstances may be barred on the grounds of the plaintiff's own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.

472 U.S. at ---, 86 L.Ed. 2d at 224, 105 S.Ct. at ---.

Although we are in full agreement with most of the reasoning relied upon by the Supreme Court of the United States, we believe that the rule it has adopted will be difficult and impractical to apply in actual cases and will make it almost impossible for attorneys or their clients to know in advance whether any particular actions will give rise to the *in pari delicto* defense. Further, any potential for the application of the defense in cases such as this will give some encouragement to the few dishonest securities professionals to engage in such "particularly egregious" conduct. Based on reasoning similar to that relied upon by the Supreme Court and previously quoted herein, we therefore conclude that the defense has no place in cases such as this. The doctrine of *in pari delicto*, with its complex scope, contents and effects, should not be recognized as a defense to claims under state law concerning securities transactions involving the transfer of purported inside information by corporate insiders or securities professionals to plaintiffs who have acted upon such information for their own gain and suffered damages as a result. *Cf. Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 140 (1968) ("the doctrine of *in pari delicto*, with its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust action."). Therefore, we hold that with regard to claims under North Carolina law, the fact that a plaintiff has dealt in

securities for gain upon purported inside information will not give rise to the common law defense of *in pari delicto* in an action by such plaintiff against an insider or securities professional providing the information.

For the foregoing reasons, that part of the opinion of the Court of Appeals holding that the trial court erred in failing to dismiss all of the plaintiffs' claims must be and is reversed. We hold that the trial court erred in dismissing any of the plaintiffs' claims on the ground that the doctrine of *in pari delicto* gave rise to an affirmative defense to them.

[2] Having determined that the *in pari delicto* defense has no applicability in the present case, it becomes necessary for us to address an additional issue. The plaintiffs allege among other things that "Defendants' conduct, as alleged, constitutes an unfair and/or deceptive act affecting commerce within the meaning of N.C.G.S. 75-1.1." The plaintiffs contend that they are therefore entitled to recover treble damages under N.C.G.S. 75-16 and reasonable attorneys' fees under N.C.G.S. 75-16.1. The defendants argue on appeal, on the other hand, that securities transactions are beyond the scope of N.C.G.S. 75-1.1. We agree with the defendants.

In *Bache Halsey Stuart, Inc. v. Hunsucker*, 38 N.C. App. 414, 248 S.E. 2d 567 (1978), *cert. denied*, 296 N.C. 583, 254 S.E. 2d 32 (1979), our Court of Appeals held that commodities transactions are not within the scope of N.C.G.S. 75-1.1. The Court of Appeals based its holding on the fact that there existed a "pervasive" federal scheme for regulating commodities transactions. Further, it recognized that application of the statute to commodities transactions would expose a party violating the statute to a host of legislatively created sanctions in addition to those sought in the private action. We find the reasoning of the Court of Appeals in *Hunsucker* persuasive and equally applicable in the present case involving securities transactions. We also think it important that our research reveals no case in which a state court has held that its unfair trade practices act extends to securities transactions.

It is also important to note that N.C.G.S. 75-1.1 is identical to § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). As a result, this Court has held "that federal decisions interpreting the FTC Act may be used as guidance in determining the scope and meaning of G.S. 75-1.1." *Marshall v. Miller*, 302 N.C. 539, 542,

276 S.E. 2d 397, 399 (1981). "Thus, the fact that no federal court decision has applied § 5(a)(1) of the FTC Act to securities transactions is additional evidence of the scope of § 75-1.1." *Lindner v. Durham Hosiery Mills, Inc.*, 761 F. 2d 162, 167 (4th Cir. 1985).

We hold that securities transactions are beyond the scope of N.C.G.S. 75-1.1. We find persuasive the view that our holding in this regard

is consistent with § 75-1.1's purpose to protect the consuming public, the North Carolina cases holding that other federal or state statutes may limit the scope of § 75-1.1, the absence of any other state court decision holding that securities transactions are subject to a similar Unfair Trade Practices Act, and the absence of any federal court decision holding that securities transactions are subject to § 5(a)(1) of the FTC Act. We do not believe that the North Carolina legislature would have intended § 75-1.1, with its treble damages provision, to apply to securities transactions which were already subject to pervasive and intricate regulation under the North Carolina Securities Act, N.C. Gen Stat. § 78A-1 *et seq.* (1981), as well as the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (1982), and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1982). Furthermore, to hold that § 75-1.1 applies to securities transactions could subject those involved with securities transactions to overlapping supervision and enforcement by both the North Carolina Attorney General, who is charged with enforcing § 75-1.1, and the North Carolina Secretary of State, who is charged with enforcing the North Carolina Securities Act.

761 F. 2d at 167-68.

That part of the decision of the Court of Appeals affirming the trial court's Rule 12(b)(6) dismissal of the plaintiffs' claim for relief under the Unfair Trade Practices Act, N.C.G.S. 75-1.1, must be and is affirmed. As indicated, however, that part of the trial court's order must be affirmed for different reasons than those relied upon by the Court of Appeals. That part of the decision holding that the *in pari delicto* defense required the trial court to dismiss any of the plaintiffs' claims is reversed. This case is remanded to the Court of Appeals for its further remand to the

Superior Court, Durham County for proceedings consistent with this opinion.

Reversed in part, modified and affirmed in part and remanded.