**R.V. McPHAIL, Jr. and Dan C. Gunter, Plaintiffs,**

v.

**John David WILSON and Stephen K. Flory, Defendants.**

**No. C–C–89–483–M.**

United States District Court, W.D. North Carolina, Charlotte Division.

March 29, 1990.

**1012**

Charles D. Gray, III, Gray, Albright & Sumner, Gastonia, N.C., for plaintiffs.

Mack Ed Swindle, Thomas D. Harkins, Jr., Fort Worth, Tex., and Catherine E. Thompson, Smith, Helms, Mulliss & Moore, Charlotte, N.C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

McMILLAN, District Judge.

### PROCEDURAL BACKGROUND

On November 28, 1989, plaintiffs McPhail and Gunter sued the defendants in North Carolina Superior Court, Gaston County, for alleged violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75–1.1. On December 28, 1989, defendants removed the case from state court, and on the same day they filed their motion to dismiss. The case was set for hearing during the March 12, 1990, motions calendar and on March 13, 1990, the court heard arguments from counsel.

For the reasons discussed below, defendants' motion to dismiss is GRANTED. However, in its discretion, the court orders that the plaintiffs shall have thirty days from the filing of this order to file an amended complaint remedying the deficiencies discussed below.

### FACTS

In 1987, HyperDril, a Texas corporation, was created. The corporation was formed to promote, market and license a newly patented water driven drill.

Defendants Wilson and Flory were hired by the inventor of the drill to serve as promoters of the drill. Wilson and Flory were also elected to serve as directors of HyperDril, and both defendants became major shareholders in the enterprise.

In December, 1987, the defendants came to North Carolina and staged an oral and written presentation about the newly patented drill and the newly formed company. Plaintiffs Gunter and McPhail attended the presentation. After the presentation, plaintiff Gunter purchased one hundred thousand shares of HyperDril stock at a price of one dollar per share. Sometime later, McPhail purchased fifty thousand shares of HyperDril stock at the same price.

From December, 1987, until February, 1989, the price of HyperDril stock fell precipitously. In February, 1989, both plaintiffs disposed of their HyperDril stock for a nominal value. Neither plaintiff is currently a shareholder in HyperDril.

Paragraph 6 of the complaint, and its ten subparts, recite the substantive allegations of the dispute. The complaint contains two types of allegations: 1) wrongs against all shareholders (also referred to as wrongs against the corporation); and 2) wrongs against McPhail and Gunter alone (also referred to as individual wrongs).

In the first category (wrongs against the corporation) are the allegations that defendants (a) diluted the stock of HyperDril; (b) failed to follow corporate formalities; (c) breached their fiduciary duties as corporate directors; (d) engaged in various forms of self-dealing; (e) embezzled funds from the corporation; and (f) intentionally destroyed the market for HyperDril stock. None of these alleged wrongs is unique to the plaintiffs in this case, but all of these effect equally all of the shareholders of Hyper-Dril.

In the second category (individual wrongs) is the single allegation contained in paragraph 6(a) that Wilson and Flory failed to disclose or misrepresented certain material information in connection with the December, 1987, oral and written presentation. This alleged wrong is unique to the plaintiffs because the misrepresentations or omissions on which plaintiffs rely were not made to all HyperDril shareholders.

Plaintiffs argue that all of the above conduct, as alleged in paragraph 6 of the complaint, violates the North Carolina Unfair and Deceptive Trade Practices Act. On the other hand, defendants argue that the alleged conduct may only be asserted by the corporation itself or by a shareholder in a derivative suit. They argue that because the plaintiffs have failed to sue on behalf of the corporation and because they have failed to follow the details of Texas corporate law, the case must be dismissed. For the most part, the court agrees with the defendants.

## DISCUSSION

Generally, it is not difficult to determine whether a legal or equitable claim properly belongs to a shareholder or the corporation. If the injury is one to the plaintiff individually (such as an action based upon a contract to which the individual is a party, or a fraud against the shareholder directly) then it is an individual action. But, if the wrong is primarily against the corporation, redress must be sought by the *corporation* or by a shareholder *who sues derivatively* (on behalf of the corporation). Fletcher

Cyclopedia Corporations, Vol. 13 § 5911 (1980).

## A.  *Wrongs Against the Corporation.*

■ With the exception of plaintiffs' allegation of misrepresentation, all of the claims of the complaint seek to recover for losses suffered by the plaintiffs for acts of the defendants which caused plaintiffs' stock to decline in value. These are harms suffered by *all* HyperDril shareholders, and are *not* harms suffered uniquely by the individual plaintiffs in this case.

For example, in paragraphs 6(b) and 6(f) of the complaint, plaintiffs allege that without authorization the defendants issued themselves several million shares of Hyper-Dril stock. This issuance of "watered stock" caused the price of plaintiffs' shares to plummet. Assuming these allegations to be true, what the plaintiffs fail to recognize is that *all* shareholders of the corporation are effected equally by the dilution of HyperDril stock and the commensurate drop in the price of the shares. Therefore, this is a wrong committed against the corporation and not a wrong committed only against the individual plaintiffs.

Likewise, in paragraph 6(c), plaintiffs allege that defendant Wilson sold 324,778 shares of his personal stock in HyperDril at a time when he was supposed to promote and issue the stock of the corporation. If the alleged self-dealing is assumed to be true, this conduct harmed the *corporation* and all of its shareholders equally. This in no way constitutes a harm individual or unique to any of the plaintiffs that would give rise to an individual cause of action.

Similarly, in paragraphs 6(d), 6(e), 6(g), 6(h) and 6(i), plaintiffs allege various acts of misappropriation and embezzlement. What the complaint fails to take into account is that the corporation, not just the plaintiffs, was the victim of these alleged acts of larceny.

Therefore, all of these claims except the misrepresentation claim must be asserted by the corporation or on behalf of the corporation in the form of a derivative suit. Because the plaintiffs have failed to satisfy the requirements for bringing a sharehold-

er derivative suit, and because the plaintiffs have not made the corporation a party to this suit, these claims should be dismissed.

### B. *Individual Wrongs.*

■ The misrepresentation claim alleges a different type of harm than the harms discussed above. Assuming the allegations of the complaint to be true, the alleged acts of misrepresentation involved a small number of people—the plaintiffs, the defendants, and perhaps some relatively small number of unnamed individuals. The complaint further alleges that the misrepresentations occurred during a specific written and oral presentation which took place in December, 1987. McPhail and Gunter allege that the misrepresentations induced *them* (not all shareholders in general) to purchase stock in HyperDril. This alleged harm is one suffered by the plaintiffs in their *individual* capacities, and is not a harm suffered by all shareholders of HyperDril stock generally. This is the *type* of claim which may be asserted by an individual shareholder in his individual capacity.

Unfortunately for the plaintiffs, this does not end the inquiry. Although the misrepresentation claim, as set forth in paragraph 6(a) of the complaint, asserts the *type* of claim generally actionable by an individual shareholder, the court must still determine whether this claim is actionable under the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75–1.1. The North Carolina courts have addressed this issue.

In *Skinner v. E.F. Hutton*, 314 N.C. 267, 333 S.E.2d 236 (N.C.1985), the plaintiffs sought to recover treble damages pursuant to the North Carolina Unfair and Deceptive Trade Practices Act for defendant's fraudulent securities transactions. In that case, the plaintiffs alleged that the defendant misrepresented that the price of a stock was going to rise sharply due to a pending takeover. Relying upon this "inside information," the plaintiffs bought the stock. The plaintiffs then decided to forgo the sale of the stock (at a profit) based upon the continuing misrepresentations of the

defendant. The takeover and the sharp rise in the price of the stock never materialized and the plaintiffs sold their shares at a substantial loss.

The defendant moved to dismiss the claim of unfair and deceptive trade practices on the ground that the claim was preempted by federal securities laws. The trial court granted the defendant's motion. On appeal, the North Carolina Supreme Court affirmed in part and reversed in part the decision of the lower courts. Affirming the decision of the lower courts on the unfair and deceptive trade practices issue, the court held that securities transactions are beyond the scope of N.C.G.S. § 75–1.1. *Skinner*, 333 S.E.2d 236, 241.

The facts in *Skinner* are indistinguishable from the facts of this case. As in *Skinner*, plaintiffs' claim of misrepresentation arises from an allegedly fraudulent "securities transaction." Under the teaching of *Skinner*, the court concludes that plaintiffs' misrepresentation claim is not actionable under the North Carolina Unfair and Deceptive Trade Practices Act, and should be dismissed.

### C. *Common Law Fraud.*

At oral argument, plaintiffs' counsel asserted that even if the misrepresentation claim was not actionable under the Unfair and Deceptive Trade Practices Act, the plaintiffs should be allowed to proceed under a theory of common law fraud. Therefore, plaintiffs argued, the court should not dismiss the case in its entirety. To do so would deny the plaintiff any effective remedy at all.

The court is persuaded by plaintiffs' argument. Because the plaintiffs admittedly no longer own any stock in HyperDril, they lack standing to assert a shareholder derivative action. Moreover, as discussed above, plaintiffs cannot state a legal claim for unfair and deceptive trade practices. Therefore, they appear to be without a remedy other than common law fraud.

However, upon review of the complaint, the court is not convinced that plaintiffs have pleaded common law fraud at all; at the least, they have not pleaded it with the

requisite degree of specificity set forth in Rule 9(b) of the Rules of Civil Procedure.

In its discretion, the court grants the plaintiffs leave, if they desire, to file an amended complaint which complies with Rule 9 and sets forth the specific facts which give rise to a claim for common law fraud.

If an amended complaint is not filed within thirty days of the filing of this order, the case will be dismissed in its entirety.

Therefore, IT IS ORDERED:

1. That defendants' motion to dismiss claims 6(a) through 6(j) is GRANTED;

2. That plaintiff shall have thirty days to file an amended complaint.