IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-647

Filed: 4 April 2017

Swain County, No. 14 CVS 238

CONLEYS CREEK LIMITED PARTNERSHIP, a North Carolina limited Partnership, and MARSHALL CORNBLUM, Plaintiffs,

AND

MICHAEL CORNBLUM, MADELINE CORNBLUM, M&D CREEK, INC., a North Carolina corporation, CORNDERMAY PARTNERS, by and through its general partners, M&D Creek, Inc. and other unknown partners, and SMCC CLUBHOUSE, LLC, a North Carolina limited liability company, Counterclaim Defendants,

v.

SMOKY MOUNTAIN COUNTRY CLUB PROPERTY OWNERS ASSOCIATION, INC., a North Carolina nonprofit corporation, Defendant, Counterclaimant,

WILLIAM SPUTE, RONALD SHULMAN, and CLAUDETTE KRIZEK, Defendants,

AND

ROBERT YOUNG, Defendant in Counterclaim of SMCC Clubhouse.

Appeal by Smoky Mountain Country Club Property Owners Association from two orders entered in Swain County Superior Court: (1) order entered 30 July 2015 by Judge Tanya T. Wallace (the "Wallace Order") and (2) order entered 26 January 2016 by Judge Marvin P. Pope, Jr. (the "Pope Order"). Cross-appeal by SMCC Clubhouse, LLC, from summary judgment order entered 26 January 2016 by Judge Marvin P. Pope, Jr., in Swain County Superior Court (the "Summary Judgment Order"). Heard in the Court of Appeals 1 December 2016.

*Sigmon Law, PLLC, by Mark R. Sigmon and Sanford L. Steelman, Jr., for Conleys Creek Limited Partnership, Marshall Cornblum, Michael Cornblum, Madeline Cornblum, M&D Creek, Inc., Corndermay Partners, Counterclaim Defendants/Plaintiffs-Appellees, and SMCC Clubhouse, LLC, Counterclaim Defendant/Cross-Appellant.*

*James W. Kilbourne, Jr., for Smoky Mountain Country Club Property Owners Association, Inc., Defendant-Counterclaimant/Appellant.*

DILLON, Judge.

This matter involves a dispute concerning a residential planned community, Smoky Mountain Country Club ("SMCC"), developed by members of the Cornblum family. On one side of the dispute are members of the Cornblum family and certain entities they manage or control. On the other side of the dispute is the property owners' association (the "Association") of SMCC and several members of the Association's board of directors.

Most of the issues on appeal concern a provision included by the Cornblums in SMCC's declaration which provided that the Cornblums would build and own a clubhouse and that the Association would collect dues from the homeowners and pay the dues to the Cornblums for the right to use the clubhouse. This matter was commenced after the homeowners took control of the Association's board of directors from the Cornblums and the new board issued a letter to the community stating that the Association would no longer collect clubhouse dues on behalf of the Cornblums.

In this opinion, the association and its members are collectively referred to as the "Association." The individual property owners are referred to collectively as the "Homeowners."

## I. Factual Background

SMCC is a planned community development in Swain County. SMCC was established as a planned community in 1999 by Conleys Creek Limited Partnership (the "Declarant"), one of numerous entities involved in this matter managed by members of the Cornblum family.

Prior to 1999, the Swain County property owned by the Cornblums was already partially developed, consisting of single-family residential lots subject to the "Phase I Declaration" and condominium-style units subject to the "Townhouse Declaration." Some of the Cornblum property remained undeveloped and was not subject to either declaration.

In 1999, the Declarant recorded a declaration (the "Declaration" or "1999 Declaration") which essentially formed a new planned community by merging the residential lots and condominium-style units subject to the Phase I and Townhouse Declarations *and* including some of the undeveloped land. The 1999 Declaration was recorded in accordance with the North Carolina Planned Community Act (the "PCA") found in Chapter 47F of our General Statutes. The prior declarations which controlled the residential lots and the condominium-style units were terminated.

The 1999 Declaration provided that the Declarant would construct and own a clubhouse (the "Clubhouse") which would be available to the Homeowners for their use in exchange for Homeowners' payment of dues (the "Clubhouse Dues"). The Declaration further required the Association to collect the dues and to pay the collected dues to the Declarant. Specifically, the Declaration provided as follows:

> Declarant shall grant to the Association and the Owners . . . a perpetual nonexclusive right to use the [Clubhouse], and each Owner, in consideration thereof, shall pay the Clubhouse Dues to the Association, and the Association shall pay all of the Clubhouse Dues collected . . . to Declarant. The obligation of each Owner to pay Clubhouse Dues to the Association shall be absolute for the entire period of time that such Owner is an Owner . . . , and shall not be dependent on such Owner's actual use of the [Clubhouse]. The Association shall bill and collect the Clubhouse Dues from each Owner . . . [and] shall pay the total collected amount of Clubhouse dues to Declarant.

In 2002, the Declarant completed construction of the Clubhouse. Thereafter, the Association collected the Clubhouse Dues from the Homeowners and paid the collected amount to the Declarant as required by the Declaration.

In 2013, the Declarant and three other entities conveyed their interest in the Clubhouse property to another Cornblum family-controlled entity called SMCC Clubhouse, LLC ("SMCC Clubhouse").[1] The Association collected Clubhouse Dues

---

[1] SMCC Clubhouse is a limited liability company formed in November 2012. Its managing member is Michael Cornblum.

and paid the collected amount to SMCC Clubhouse, as required by the Declaration, [2] until 2014 when control of the Association board flipped from the Cornblums to the Homeowners.

After this change in control in the Association board, the Association sent a notice to all of the Homeowners stating that the Association would no longer be billing or collecting Clubhouse Dues. After the Association stopped collecting Clubhouse Dues, approximately one-third of the Homeowners began paying Clubhouse Dues directly to SMCC Clubhouse; however, two-thirds chose not to do so.

Approximately one month after the Association issued the notice, the Declarant commenced this action against the Association and three of its directors. None of the claims asserted in the original complaint are part of this appeal.

The Association's responsive pleadings included numerous counterclaims and added two members of the Cornblum family, two entities controlled by the Cornblums, and SMCC Clubhouse as defendants to the counterclaims.

SMCC Clubhouse responded to the Association's counterclaims by asserting several reverse counterclaims against the Association for its refusal to honor its obligation under the 1999 Declaration to collect Clubhouse Dues.

---

[2] According to the Declaration, after SMCC Clubhouse obtained ownership of the Clubhouse property, it obtained the right to receive the Clubhouse Dues which had previously been remitted to the original Declarant.

The Association's counterclaims and SMCC Clubhouse's reverse counterclaims were all dismissed in a series of three orders of the trial court. These orders are all properly before us on appeal.

## II. Analysis

The Association appeals from the Wallace Order, in which the trial court dismissed several of its counterclaims. The Association also appeals from the Pope Order, in which the trial court dismissed its remaining counterclaims. SMCC Clubhouse cross-appeals from the Summary Judgment Order, in which the trial court dismissed SMCC Clubhouse's reverse counterclaims against the Association. We address the appeal and the cross-appeal in turn.

### A. Appeal by the Association from Dismissal of Counterclaims

#### 1. The Wallace Order

The Association first appeals from the trial court's Rule 12(b)(6) dismissal of several paragraphs of its counterclaim. We affirm in part and reverse in part.

In considering a motion to dismiss pursuant to Rule 12(b)(6) our Rules of Civil Procedure, this court must conduct a *de novo* review of the pleadings to determine whether, as a matter of law, "the allegations state a claim for which relief may be granted." *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 269-70, 333 S.E.2d 236, 238 (1985).

In the Wallace Order, the trial court dismissed four of the Association's prayers for relief – Nos. 4, 7, 13 and 14 – based on its conclusion that the counterclaims supporting these prayers for relief were barred by a statute of repose. Specifically, the trial court stated as follows:

> [P]ursuant to the Statute of Repose contained in N.C. Gen. Stat. § 47F-2-117(b), Plaintiffs and Counterclaim Defendants' Motion to Dismiss in part is GRANTED. Paragraphs 4, 7, 13, and 14 of the Prayer for Relief in the [Association's] Second Amended and Restated Counterclaim challenging the validity of an amendment to the Declaration are dismissed in their entirety.

We note that the Association has not contested the dismissal of prayer for relief No. 7 on appeal.[3]

a. The trial court erred in relying on N.C. Gen. Stat. § 47F-2-117(b)

Prayers for relief Nos. 4, 13 and 14 are based on the Association's challenge of the provisions in the 1999 Declaration concerning the Clubhouse Dues. The trial court dismissed these counterclaims, concluding that those claims must have been brought within one year of the date the Declaration was recorded (which was in 1999). Specifically, the trial court relied on N.C. Gen. Stat. § 47F-2-117(b), which states that "[n]o action to challenge the validity of an amendment adopted pursuant to this

---

[3] Declarant contends that the Association's failure to contest the dismissal of prayer for relief No. 7 prevents the Association from making arguments on appeal regarding Nos. 4, 13, and 14. We disagree. While it is true that Rule 28 of our Appellate Rules provides that issues not presented in a party's brief are deemed abandoned, N.C. R. App. P. 28(b)(6), this does not affect the party's right to appeal "[f]rom any final judgment of a superior court[.]" N.C. Gen. Stat. § 7A-27(b)(1)(2015).

section may be brought *more than one year* after the amendment is recorded." N.C. Gen. Stat. § 47F-2-11(b) (2015) (emphasis added.)

We conclude that N.C. Gen. Stat. § 47F-2-117(b) *does not apply* to the 1999 Declaration and, therefore, that the trial court erred in dismissing Nos. 4, 13 and 14 of the Association's prayers for relief *on this basis*.[4]

The PCA contains separate provisions for amending a declaration and for merging or consolidating planned communities. The PCA does not view the process by which communities subject to separate declarations are merged into one as an *amendment* to the former declarations. Rather, the PCA treats the process as a merger which essentially *terminates* the former declarations and the planned communities they govern and *establishes* a new planned community subject to a new declaration.[5] *See* N.C. Gen. Stat. § 47-2-121 (2015).

N.C. Gen. Stat. § 47F-2-121 states that "[a]ny two or more planned communities . . . may be merged or consolidated into a single planned community." N.C. Gen. Stat. § 47F-2-121(a). Here, the 1999 Declaration was not an amendment

---

[4] We need not – and do not – reach the issue of whether N.C. Gen. Stat. § 47F-2-117(b) is, in fact, a statute of repose.

[5] Under the PCA, a merger requires the approval of the same percentage of owners which must approve a termination, not the percentage needed to approve an amendment. *See* N.C. Gen. Stat. § 47F-2-121. And under the PCA, a termination (and therefore a merger) requires the approval of 80% of the owners. *See* N.C. Gen. Stat. § 47F-2-118. Here, it appears that one of the two former communities approved the merger with 99% of the vote and the other with 75% of the vote. We note that neither party has made any argument concerning the validity of the adoption of the 1999 Declaration, and all parties have been acting as if the 1999 Declaration was validly approved for almost two decades.

to the Phase I Declaration or to the Townhouse Declaration, but in fact created a new planned community.  This is true despite the fact that the Declaration asserts itself as an "amendment" to the Phase I Declaration and the Townhouse Declaration.  In concluding as such, we are guided by the relevant provisions of the PCA and the actual form and function of the 1999 Declaration.  The Declaration states that its purpose was to "have a single cohesive Declaration" for the property and that the *two* prior declarations "shall be . . . of no further force and effect for any purpose whatsoever, and [shall be] replaced in their entirety by the Declaration."  It also appears from the record that the Declaration adjusted the property lines of the prior planned communities and added additional property, which further suggests that the Declaration created a *new* planned community.  Whether labelled as an amendment or not, it is clear that the Declaration in fact "merged or consolidated" the two former planned communities "into a single planned community."  *See* N.C. Gen. Stat. § 47F-2-121(a).

The plain language of N.C. Gen. Stat. § 47F-2-117(b) states that the one-year limitation applies only to *amendments* made to an existing declaration.  N.C. Gen. Stat. § 47F-2-117(b).  Therefore, based on the statutory scheme of the PCA, we hold that the trial court erred in construing the 1999 Declaration as an amendment subject to the one-year time limit contained in N.C. Gen. Stat. § 47F-2-117(b).  We now turn

to examine the pleadings themselves to determine whether dismissal was nonetheless appropriate.

b. We affirm the Wallace Order as it pertains to Prayer for Relief No. 4

In No. 4, the Association requested a declaration that "the Association has no duty under the law to collect Clubhouse Dues from owners and that any such duty stated in the Declaration is null and void." We hold that the Association has failed to state a claim in its pleadings for which this relief can be granted. Therefore, we affirm the dismissal of prayer for relief No. 4.

The Association pleads and argues in its brief only one theory to support its contention that it has no duty to collect Clubhouse Dues. Specifically, the Association contends that the Clubhouse is not a "common element" of the Association, and as such, it has no authority under the PCA to collect the Clubhouse Dues from the Homeowners and pay them to a third party, SMCC Clubhouse.[6]

The Association is mistaken in its argument. The PCA *does* empower the association of a planned community to "[i]mpose and receive any payments, fees or charges" not only for the use of "common elements" but also "for services provided to lot owners." N.C. Gen. Stat. § 47F-3-102(10) (2015). Here, the owner of the

---

[6] The Association did not plead or argue any other theory. For instance, it did not contend that the Declaration was valid but that the Association had the right to terminate its obligation to collect the Clubhouse Dues based on N.C. Gen. Stat. § 47F-3-105 (2015), which allows an association to terminate any contractual obligation put in place by a declarant that is not *bona fide* or is unconscionable to the owners within the planned community.

Clubhouse is providing a *service* to the Homeowners, namely, access to the Clubhouse. The Association is merely collecting dues, a function allowed for under the PCA.

c. We affirm the Wallace Order's dismissal of prayers for relief Nos. 13 and 14

In Nos. 13 and 14, the Association requested repayment of "all Clubhouse Dues improperly collected and paid [to the Declarant and later to SMCC Clubhouse] in an amount to be determined at trial." As to these prayers for relief, the pleadings state that the Homeowners' obligation to pay Clubhouse Dues was "not authorized by law," and that Homeowners who have never used the Clubhouse are entitled to a reimbursement. We disagree.

The PCA *does* allow an association to collect dues for services provided to the owners by a third party, such as here where SMCC Clubhouse is providing the Clubhouse as an amentity to the Homeowners. *See* N.C. Gen. Stat. § 47F-3-102(10). A Homeowner is not entitled to a reimbursement merely because he never actually used the Clubhouse. The Homeowners' obligation to pay the Clubhouse Dues is not linked to their actual use of the amenity. It is linked to their *right* to use the amenity, whether they actually use the amenity or not. In fact, the 1999 Declaration explicitly states that "[t]he obligation of each Owner to pay Clubhouse Dues to the Association shall be absolute . . . and shall not be dependent on such Owner's actual use of the Clubhouse[.]" Accordingly, the trial court's dismissal of prayers for relief Nos. 13 and 14 is affirmed.

- 11 -

2. The Pope Order

The Association next challenges the Pope Order, in which the trial court dismissed its remaining six counterclaims. We review the trial court's dismissal of these counterclaims *de novo*. *See Wells Fargo Bank v. Corneal*, 238 N.C. App. 192, 195, 767 S.E.2d 374, 377 (2014). In doing so, we must consider the allegations of the complaint as admitted and determine, as a matter of law, whether the allegations state a claim for which relief may be granted. *Id.*

a. Counterclaims for Declaratory Judgment and Reformation

The first two counterclaims dismissed in the Pope Order did not involve the Clubhouse Dues dispute. Rather, these counterclaims concern the treatment by the 1999 Declaration of the condominium-style units formerly governed by its own separate declaration (the Townhouse Declaration).

The Association sought a declaration that the condominium-style units within the planned community were subject to the Condominium Act and that the 1999 Declaration should be reformed so that the common areas within the portion of SMCC where the condominium-style units are located be held in common by the condominium unit owners themselves rather than by the Association. We disagree, and for the following reasons we hold that this claim was properly dismissed.

As previously stated, the 1999 Declaration is governed by North Carolina's Planned Community Act (the "PCA"), codified in Chapter 47F. Under North

Carolina's Condominium Act, codified in Chapter 47C, however, a unit is not considered a "condominium" under that Act unless the common areas are owned in common by the unit owners themselves *rather than by an association*. N.C. Gen. Stat. § 47C-1-103 (2015). The Association points out that, here, the 1999 Declaration is contradictory as it refers to the condominium-style units as "condominiums" even though the Association retains ownership of all of common elements within SMCC. The Association seeks a reformation of the Declaration whereby the common areas within the portion of SMCC where the condominium-style units are located are to be owned by the owners of the condominium-style units in common, rather than by the Association.

Although the 1999 Declaration refers to certain units as "condominiums," these units need not fit the definition of "condominium" within the Condominium Act to be a recognized property interest in North Carolina. The official commentary to the Condominium Act explains that if common elements are owned by an association in which each unit owner is a member, the individual units may have many of the attributes of a condominium, however, they would *not* be "condominiums" covered by the Condominium Act. *See id.* There is nothing unlawful about the manner in which the common areas within SMCC are held. Although the property interests of the owners in the condominium-style units within SMCC do not fit the definition of "condominium" under North Carolina's Condominium Act, it is a permitted type of

property interest under the Planned Community Act. Accordingly, we affirm the trial court's dismissal of these counterclaims.

### b. Breach of Fiduciary Duty

In its third counterclaim, the Association sought damages for breach of fiduciary duty by Michael Cornblum, Carolyn Cornblum and the Declarant. We affirm the dismissal as to the Association's counterclaim against the Declarant. However, we reverse as to Michael Cornblum and Carolyn Cornblum.

"A claim for breach of fiduciary duty requires the existence of a fiduciary duty." *Governors Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 247, 567 S.E.2d 781, 786 (2003).

We agree with the Declarant that the trial court properly dismissed this counterclaim as against the Declarant, because its relationship with the Association was contractual. *See Highland Paving Co., LLC v. First Bank*, 227 N.C. App. 36, 43, 742 S.E.2d 287, 292-93 (2013) ("[P]arties to a contract do not thereby become each other's fiduciaries[.]"). That is, a declarant is not required to put the interests of the association ahead of its own in every instance when it sets up a planned community, as generally would be required of a fiduciary. Indeed, a declarant is allowed to reserve rights to itself and enter into contractual relationships between itself and the association.

However, as *directors* and *officers* of the Association, Michael and Carolyn Cornblum certainly *did* owe a fiduciary duty to the Association during the time they served as directors or officers. *See Governors Club*, 152 N.C. App. at 248, 567 S.E.2d at 786-87 (citing *Underwood v. Stafford*, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967) (stating that under North Carolina Law, "directors of a corporation generally owe a fiduciary duty *to the corporation*"); *see also Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E.2d 551 (1983).

N.C. Gen. Stat. § 55–8–30 requires a corporate director to discharge his or her duties as a director: (1) in good faith; (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) in a manner the director reasonably believes to be in the best interests of the corporation. N.C. Gen. Stat. § 55-8-30(a)(1)-(3) (2015); *see also* N.C. Gen. Stat. § 55-8-42(a) (2015) ("An *officer* . . . shall discharge his duties . . . in a manner *the officer* reasonably believes to be in the best interests of the corporation.") (emphasis added). "Allegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations applicable to contract actions contained in N.C. Gen. Stat. § 1-52(1) (2003)." *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 66–67, 614 S.E.2d 328, 335 (2005) (citing *Tyson v. N.C.N.B.*, 305 N.C. 136, 142, 286 S.E.2d 561, 565 (1982); *see* N.C. Gen. Stat. § 1-52(1) (2015).

The Association's counterclaim alleges that Carolyn Cornblum was an officer until 2014 and that Michael Cornblum was a director until 2014. The Association makes a number of allegations tending to show that the Cornblums acted in their own interests and not in the best interests of the Association by diverting Association funds for their own benefit within the applicable limitations period. Accordingly, we hold that the trial court improperly dismissed the Association's counterclaim for breach of fiduciary duty as to Michael and Carolyn Cornblum.

c. Unfair and Deceptive Trade Practices

In its fourth counterclaim, the Association sought damages based on allegations that Michael Cornblum, Carolyn Cornblum, Madeline Cornblum and the Declarant committed unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 (2015).

Our Court has stated that the purpose of N.C. Gen. Stat. § 75-1.1 is "to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within [North Carolina] and applies to dealings between buyers and sellers at all levels of commerce. *United Virginia Bank v. Air-Lift Associates*, 79 N.C. App. 315, 320, 339 S.E.2d 90, 93 (1986). An action for unfair and deceptive trade practices "is a distinct action separate from . . . breach of contract[.]" *Id.*

To properly state a claim for unfair and deceptive trade practices, a plaintiff must allege that (1) defendant has committed unfair or deceptive acts or practices; (2) defendant's conduct was in commerce or affected commerce; and (3) defendant's conduct caused injury to plaintiff. *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71-72, 653 S.E.2d 393, 399 (2007). Whether an act is an unfair or deceptive practice is a question of law for the court. *Id.* at 71, 653 S.E.2d at 399.

Here, as in *White v. Thompson*, 364 N.C. 47, 691 S.E.2d 676 (2010), the unfairness alleged by the Association "did not occur in . . . dealings with [other market participants]." *Thompson*, 364 N.C. at 54, 691 S.E.2d at 680. The purported misconduct by the Cornblum family was alleged to have taken place while members of the Cornblum family were controlling directors of the Association.[7] Even taken as true, the allegations regarding the actions of the Declarant and the members of the Cornblum family are more properly classified as occurring within a single entity rather than "within commerce." *Id.* Thus, we conclude that the trial court properly dismissed the Association's claim for unfair and deceptive trade practices.

d. Breach of Covenant of Good Faith and Fair Dealing

---

[7] Only one allegation arguably touches on conduct by the Cornblums outside their role within the Association – that they marketed the condominium properties in violation of North Carolina law. However, as we have held that the condominium-style units are proper real estate interests under the PCA and as the Association has not alleged any misrepresentation concerning these units, any claim based on this conduct is properly dismissed.

- 17 -

In its fifth counterclaim, the Association sought damages based on an alleged breach of the covenant of good faith and fair dealing with the Declarant.

In order to properly state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead that the party charged took action "which injure[d] the right of the other to receive the benefits of the agreement," thus "depriv[ing] the other of the fruits of [the] bargain." *Bicycle Transit Authority, Inc. v. Bell*, 314 N.C. 219, 228-29, 333 S.E.2d 299, 305 (1985).

We conclude that the Association's fifth counterclaim should not have been dismissed. The counterclaim does allege a contractual relationship that was established in the Declaration itself. The pleadings allege that "[the Declarant] imposed upon the owners [within the Planned Community] a declaration whose terms and provisions must be in good faith and fair dealing." That is, the 1999 Declaration stated that the Declarant entity would build and maintain the Clubhouse for the benefit of the Homeowners, that the Homeowners would pay the Clubhouse Dues, and that the Association would collect and remit the Clubhouse Dues, thus setting up a contractual obligation.

### e. Accounting

In its final counterclaim, the Association sought an equitable accounting of the Association's income and expenses and collection history during all periods of Declarant control. We agree with the Declarant that this issue is moot based on the

parties' agreement via a consent order that the Declarant would deliver all "books and records relating to the Association" in their custody or control. The consent order provided that these "books and records" would include financial records of the Association, including a schedule of all funds receivable for the payment of assessments. A determination on this counterclaim would have no practical effect in light of the consent order. *See Roberts v. Madison Cnty. Realtors Ass'n, Inc.*, 344 N.C. 394, 398–99, 474 S.E.2d 783, 787 (1996) ("A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.").

### B. Cross-Appeal by SMCC Clubhouse

SMCC Clubhouse is the entity which currently owns the Clubhouse. After being named as a Defendant in the Association's counterclaims against the Declarant, SMCC Clubhouse asserted four counterclaims against the Association and its individually named members. These counterclaims were related to the Association's refusal to continue billing and collecting Clubhouse Dues on behalf of SMCC Clubhouse.

Specifically, SMCC Clubhouse asserted the following counterclaims: (1) breach of contract and breach of covenant of good faith and fair dealing, (2) civil

conspiracy, (3) libel *per se*,[8] and (4) unfair or deceptive acts or practices. In the Summary Judgment Order, Judge Pope granted the Association's summary judgment motion on all four counterclaims.

On appeal from a grant of summary judgment, our standard of review is *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Summary judgment is appropriate only when the record shows that there is "no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Id.*

1. Breach of Contract and the Covenant of Good Faith and Fair Dealing

The first counterclaim asserted by SMCC Clubhouse was for breach of contract and breach of the covenant of good faith and fair dealing. On appeal, SMCC Clubhouse contends that summary judgment was improper because the 1999 Declaration constitutes a valid and enforceable contract which was breached by the Association when it refused to bill and collect Clubhouse Dues from the Homeowners.

The Declaration, as recorded in 1999, specifically provided that SMCC was a "planned community development under the North Carolina Planned Community Act." N.C. Gen. Stat. § 47F-2-103, a section of the PCA, states that "the declaration, bylaws, and articles of incorporation form the basis for the legal authority for the

---

[8] SMCC Clubhouse has made no argument on appeal regarding the trial court's grant of summary judgment on its claim for libel *per se*, and therefore we regard this claim as abandoned. *See* N.C. R. App. P. 21.

planned community to act *as provided* in the declaration, bylaws, and articles of incorporation, and [these documents] are *enforceable by their terms.*" N.C. Gen. Stat. § 47F-2-103(a) (2015) (emphasis added).

The terms of the Declaration clearly establish contractual obligations between the Declarant, as the owner of the Clubhouse, and the Homeowners:

> Declarant shall grant to the Association and the Owners of Lots, Townhouse Units, and Condominium Units a perpetual nonexclusive right to use the Clubhouse Use Facilities, and each Owner, in consideration thereof, shall pay the Clubhouse Dues to the Association, and the Association shall pay all of the Clubhouse Dues collected from Owners to Declarant.

> The obligation of each Owner to pay Clubhouse Dues to the Association shall be absolute for the entire period of time that such Owner is an Owner of a Lot, Townhouse Unit, or Condominium Unit . . . and shall not be dependent on such Owner's actual use of the Clubhouse Use Facilities. The Association shall bill and collect the Clubhouse Dues from each Owner on a current basis, and . . . shall pay the total collected amount of Clubhouse Dues to Declarant.

"When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit." *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962).

A successful breach of contract claim requires proof of "(1) the existence of a valid contract, and (2) breach of the terms of the contract." *RD&J Props. v. Lauralea-Dilton Enters., LLC,* 165 N.C. App. 737, 742, 600 S.E.2d 492, 497 (2004).

Here, the language of the Declaration clearly obligates the Association to bill and collect Clubhouse dues and to pay the total collected amount of Clubhouse Dues to the Declarant. The fact that the original Declarant does not currently have title to the Clubhouse is irrelevant. The Declaration provides that its provisions and all of its covenants would be "binding upon Declarant, its successors and assigns[.]" The 2013 deed conveying the Clubhouse to SMCC Clubhouse specifically stated that the Clubhouse was being conveyed subject to the terms of the Declaration.

The Association sent a message to the Homeowners that the Association "would no longer bill for or collect Clubhouse Dues," that monthly payments "would no longer include Clubhouse Dues," and that members of the Association were "not required" to belong to the Clubhouse and "may opt out if they so desire." These statements are in clear conflict with the express and unambiguous terms of the Declaration, which require the Association to bill and collect Clubhouse Dues and to remit those dues to the Declarant or its successor in interest.

As previously stated, we find that the arrangement whereby an Association collects dues from its homeowners to pay a third party for services provided to the homeowners is lawful under the PCA. Therefore, we reject the Association's arguments that the nature of the contract violated North Carolina law.

We note that the PCA does provide that an association controlled by the homeowners may, in limited circumstances, terminate a contract entered into when

the association was under declarant control. An association may do so, absent some breach by the other party, *only* where the association can prove that the contract itself was "not bona fide or was unconscionable." N.C. Gen. Stat. § 47F-3-105. We further note that the protections afforded associations and their homeowners covered by the Condominium Act are much broader. For instance, an association governed by Condominium Act may terminate *any* "contract or lease between the association and a declarant" even if the contract is not found to be unconscionable. N.C. Gen. Stat. § 47C-3-105. However, the General Assembly did not include this language when it enacted the PCA. Here, the Association has not met its burden of showing that it is entitled to summary judgment based on the contract being unconscionable, not "bona fide," or for any other reason. Accordingly, we conclude that the trial court's grant of summary judgment in favor of the Association on SMCC Clubhouse's breach of contract claim was improper. Likewise, we conclude that a genuine issue of fact exists as to whether the Association acted in good faith in terminating its collection of the Clubhouse Dues.

2. Civil Conspiracy and Unfair or Deceptive Acts or Practices

SMCC Clubhouse asserted a second counterclaim for civil conspiracy against the Association and its members. In order to establish a claim for civil conspiracy, a party must allege (1) the existence of a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a

proximate result of the conspiracy. *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444, 666 S.E.2d 107, 116 (2008). The doctrine of intra-corporate immunity provides that because "at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 84 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007), *rev'd on other grounds*, *State ex rel. Cooper*, 362 N.C. 431, 666 S.E.2d 107 (2008).

Here, we conclude that the trial court properly granted summary judgment for the Association on SMCC Clubhouse's civil conspiracy claim because the Association, as a corporation, cannot conspire with itself. *See id.* There is no allegation that the Association and its members conspired with any third party regarding the Clubhouse Dues.

In SMCC Clubhouse's final claim, it sought "damages caused by a civil conspiracy," based on the fact that "civil conspiracy to cause a breach of contract is an unfair practice." Because we sustain the trial court's grant of summary judgment on SMCC Clubhouse's civil conspiracy claim, we also uphold the trial court's grant of summary judgment on SMCC Clubhouse's related claim for damages for unfair or deceptive acts or practices.

### III. Conclusion

We affirm the Wallace Order's dismissal of four paragraphs from the Association's Second Amended and Restated Counterclaim.

We reverse the Pope Order's 12(b)(6) dismissal of the Association's third counterclaim from its Third Amended Counterclaims alleging breach of fiduciary by Michael Cornblum and Carolyn Cornblum, and remand for further proceedings not inconsistent with this opinion. The Pope Order's dismissal of the remainder of the Association's counterclaims is affirmed.

We reverse the Summary Judgment Order's grant of summary judgment on SMCC Clubhouse's claim for breach of contract and breach of the covenant of good faith and fair dealing, and remand for further proceedings not inconsistent with this opinion. The Summary Judgment Order is otherwise affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges McCULLOUGH and TYSON concur.